[Civ. No. 12571.   First Dist., Div. One.   May 2, 1944.]

ROBERT G. CONROY, Respondent, v. RICARDO PEREZ
et al., Appellants.

Phillip Barnett and Robert L. Dreyfus for Appellants.

J. W. Jackson for Respondent.

KNIGHT, J.—The defendants appeal from an order granting plaintiff's motion for a new trial in an action brought by plaintiff to recover damages for the death of his infant daughter, aged two years and eight months. She was crushed beneath the wheels of a truck operated by the defendant Perez and belonging to the other defendants, when

Perez started backing up the truck without observing that the child was behind it.

The cause of action set forth in the complaint was based on allegations of negligence in the operation of the truck. The answer of the defendants denied the allegations of negligence, and as special defense set up contributory negligence on the part of the child. Just before the evidence was closed, the defendants, over plaintiff's objections, were granted leave to amend their answer so as to set up also contributory negligence on the part of the child's father; and instructions were given relating to that special defense. However, no amended pleading was ever filed, nor was the original answer amended of record pursuant to the leave granted. The jury returned a verdict in favor of the defendants, and judgment was entered accordingly.

The motion for new trial was based on all statutory grounds, but the order granting the motion did not specify the ground thereof. It must be conclusively presumed, therefore, that the new trial was not granted upon the ground of insufficiency of the evidence. Furthermore, since no affidavits were filed in support of the motion, it must be presumed that the ground upon which the motion was granted was errors of law occurring at the trial. Among those relied upon by respondent in support of the trial court's order is the giving of prejudicially erroneous instructions.

The rule governing reviewing courts on appeals of this kind may be stated as follows: "The granting or denial of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon a manifest and unmistakable abuse. It is especially so when such discretion is used in awarding a new trial which does not finally dispose of the matter." (2 Cal.Jur. 905; *Pettigrew* v. *O'Donnell*, 32 Cal.App.2d 502 [90 P.2d 93].) And where the subject of erroneous instructions is involved, it is held that a wide discretion should be allowed to the trial court and that the order granting the new trial must not be disturbed unless there appears to be an abuse of discretion. (*Pope* v. *Wenisch*, 109 Cal.App. 608 [293 P. 622], citing *Thompson* v. *California Const. Co.*, 148 Cal. 35 [82 P. 367]; *Associated Fruit Co.* v. *Marone*, 68 Cal.App. 358 [229 P. 868], and 20 Cal.Jur. 140.) In order to determine whether the court abused its discretion in the present case it will be necessary to view the instructions in the light of the facts established.

The accident happened on Sunday, August 17, 1941, about noontime, at the Sunnydale housing project on Sunnydale Avenue in San Francisco, in the vicinity of Visitacion Valley. The particular part of the project where the accident occurred consisted of a parking area about 60 feet wide and some 100 feet long, the entrance to which was on Sunnydale Avenue. The parking area was bordered by sidewalk on all sides; and to the north and west were the apartment buildings, in one of which apartments Conroy, the plaintiff, lived with his wife and child. The area was used by the tenants of the project both as a drive-in and to park their cars, and was also used by deliverymen and trucks, etc., and there is evidence showing that children played there. On the day of the accident a Mrs. Matteson, one of the tenants, planned to move. Two friends of hers, a Mr. Booth, and defendant Perez, who with his wife and child had been tenants of the apartments up to several weeks preceding the accident, arranged to rent a truck from defendant Evans Auto Truck Rental Co. and help Mrs. Matteson move. About noon Perez and Booth backed the truck into the parking area, Perez doing the driving, and he stopped near the entrance to Mrs. Matteson's apartment. There were several cars parked in the area. One was plaintiff's, which he was washing when the truck arrived, and while he was washing it the child was playing around the car. Another car belonged to one Weiler, who lived next door to Mrs. Matteson. It was parked in front of Mrs. Matteson's door, and Booth alighted from the truck and went in to ask Weiler to move his car. Perez remained with the truck and kept the engine running. Soon after the truck arrived Mrs. Matteson's two boys ran out and climbed on the truck and Perez told them to get off. Meanwhile two other boys named Rystad passed behind the truck twice. They lived in the apartments with their mother. Soon Weiler came out and moved his car, whereupon Perez started to back the truck up to Mrs. Matteson's door, and he backed it about eight feet when it struck the Conroy child.

Conroy saw the truck when it arrived at the parking area, but shortly afterwards he finished washing his car and went into his apartment, taking the child with him. He took her to the kitchen and gave her a drink of water, and left her in the living room downstairs, with the front door closed, while he went upstairs to change his clothes. His wife was upstairs also; but he had been up there only a few minutes when

he heard a scream, and running out saw the child had been run over by the truck.

Perez denied having seen the Conroy child, or the two Rystad boys, but there is affirmative evidence showing their presence near the truck while Perez was waiting for Weiler to move his car. One of these witnesses so testifying was Mrs. Rystad. She testified that she was looking out her window and saw her boys cross the parking area to the opposite sidewalk; that the truck was there then, and her boys passed back of it; that the Conroy child was standing in back of the truck; that three or four minutes later she went out to call her children back, and the Conroy child was still back of the truck; that as her children came back they again passed back of the truck; that she observed the truck parked there for some 15 minutes, and saw the Matteson children playing on it; that she was standing in her doorway when she saw the truck start to back up; that the driver did not look toward the back, and she screamed for him to stop as the Conroy child was still about two feet back of the truck; that she ran toward the truck, and the driver stopped the truck, but the child had been struck; that the truck had backed about eight feet before it stopped. She also testified that the back yards of the project were not finished, so the children were in the habit of playing in the parking area, and often left their toys there. One of Mrs. Rystad's boys also testified not only as to his own presence about the truck but also the presence of the Conroy child. In this respect he stated that after the truck had backed in and stopped he crossed behind it twice, and that on each occasion the Conroy child was behind it. Mrs. Perez, wife of the defendant Perez, and Mrs. Matteson testified that they were standing in the latter's doorway when the truck backed in; that Booth then went to ask Weiler to move his car, which Weiler did; that they saw the Matteson boys jump on the truck, and that Perez told them to get off; that when he started backing the truck, they saw the Conroy child running just a few feet behind the truck; and Mrs. Perez testified that she screamed, but it was too late.

There is a conflict of testimony as to Perez' movements after he arrived with the truck. Mrs. Rystad testified that he remained in the cab; that after Weiler moved his car, Perez started to back his truck slowly, without looking around or sounding his horn; that he was looking ahead all the time. On the other hand, Perez, his wife and Mrs. Matteson testi-

fied that he got out of the truck to tell the Matteson boys to get off, and that before starting to back the truck he looked around toward the rear. Perez further testified that before starting to back he looked in the rear view mirror and back through the rear window of the cab. His statement, however, that he got out of the cab was completely at variance with the testimony given by him in his deposition. There, in response to a direct question, he stated that he "stayed in the truck all the time." His explanation for the contradictory testimony so given by him by deposition was that at that time he was nervous, and that since then he remembered "more clearly."

█ Negligence is not an absolute term, but a relative one; and in deciding whether a defendant has been negligent in a given case, the conduct in question must be considered in the light of all the surrounding circumstances, as shown by the evidence, which existed prior to and at the time the alleged negligent act was committed. The rule rests on the self-evident fact that a reasonably prudent person will react differently to different circumstances. Those circumstances enter into and in a sense are part of the conduct in question. As will be seen from the statement of fact hereinabove set out, the determinative question the jury here was called upon to decide, in considering the issue of the driver's negligence, was whether in the light of all the existing circumstances and conditions shown by the evidence he exercised the care of a reasonably prudent person in backing up his truck.

█ On this subject one of the instructions given to the jury was the following: "In determining whether Mr. Perez, the driver of the truck, could or could not have avoided the accident by the use of ordinary care on his part, I instruct you that his conduct is to be measured *by his means of ascertaining the facts and circumstances before* the accident as shown by the evidence. A person's conduct *before* an accident is not measured by the information that is acquired afterwards." (Italics added.) This is doubtless a misleading statement of the law. An instruction of similar import was given in the case of *Soda* v. *Marriott*, 118 Cal.App. 635 [5 P.2d 675], wherein a child was killed by the alleged negligent operation of an automobile, and a judgment in favor of the defendants was reversed on the ground of erroneous instructions. With respect to the instruction there challenged the court said: "In determining defendants' alleged negligence

this instruction wrongfully limits the consideration of the jury to such evidence only as tends to show what actual knowledge of the danger of the situation the driver of the automobile had at the time of the accident. Negligence may be adequately shown by proof of the fact that the driver of an automobile failed to exercise that degree of vigilance in the operation of the vehicle which an ordinarily prudent person should have used under similar circumstances, even though it also appears that the driver had no actual knowledge of the danger. . . . This instruction is fatally defective for that reason. The prejudicial error of this instruction is not avoided by the fact that the jury was elsewhere correctly instructed. . . . The jury was here specifically directed that they were confined to the consideration of the actual knowledge of danger which was possessed by the driver of the machine, in determining the question of negligence. This is an incorrect statement of the law." The instruction here was even more erroneous for it was limited to defendant's actual knowledge of the danger *before* the accident. Admittedly he had no actual knowledge that the child was close by when he backed up; but the instruction fails to take into consideration that if he had exercised reasonable care he might have seen that the child was there, or that he should in the exercise of reasonable care have anticipated the danger from the fact that children habitually played there, and had in fact actually been playing on his truck so that he had to ask them to get away. ▮ As the courts have frequently said, it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possessing normal and mature faculties. ▮ Their conduct is unpredictable and one operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. (*Shannon* v. *Central-Gaither U. School Dist.,* 133 Cal.App. 124 [23 P.2d 769].) The presence of children is in itself a warning requiring the exercise of care for their safety. (*Seperman* v. *Lyon Fire Proof Storage Co.,* 97 Cal.App. 654 [275 P. 980].) ▮ Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury. (See 2 Cal.Jur. Ten-Yr. Supp., p. 454.) This is especially true where the injury occurs in or about the child's home. (*Cambou* v. *Marty,* 98 Cal.App. 598 [277 P. 365].) The court there said:

"Any reasonable man can be charged with knowledge that a child is apt to be found at any place about the family yard. Charged with that knowledge it becomes his duty to use vigilance and care before setting in motion a dangerous instrumentality in that locality."

Whether the erroneous instruction was prejudicial was a question for the trial court on motion for new trial; and having granted the new trial, it must be presumed that the trial court considered that it was and that it resulted in a miscarriage of justice. As said in *Pettigrew* v. *O'Donnell, supra,* "It may be that the jury was misled by the instruction which the trial court gave and that a miscarriage of justice resulted from the giving of said instruction. The trial court was in a better position to determine that matter than we on appeal. The trial court believed that there had been a miscarriage of justice and made its order accordingly, and so long as the case presents an instance showing a reasonable or even fairly debatable justification for the order, such action will not be set aside on appeal." (See, also, *Nieves* v. *Vigolino,* 135 Cal.App. 763 [27 P.2d 916]; *Pope* v. *Wenisch, supra; Dodds* v. *Gifford,* 127 Cal.App. 629 [16 P.2d 279].)

The mere fact that other and correct instructions were given does not cure the error, for as said in *Wells* v. *Lloyd,* 21 Cal.2d 452 [132 P.2d 471], "If the statement to the jury of an essential principle of law is materially incorrect, the error is not generally remedied by a correct declaration of the same principle in another instruction. . . . [Citing numerous authorities.] It is ordinarily impossible to determine which of the conflicting rules was followed by the jury."

We are of the opinion also that the trial court was justified in granting a new trial upon the ground that because of the very young age of the deceased child the issue of its contributory negligence was improperly submitted to the jury, and consequently that it was error to instruct the jury on that subject. As said in 2 California Jurisprudence Ten-year Supplement, page 442, in the case of a very young child, it will be conclusively presumed, apparently, that the victim was incapable of foreseeing the peril to which he was exposed, and in such cases the question as to his "contributory negligence" may not be submitted to the jury. In *Todd* v. *Orcutt,* 42 Cal.App. 687 [183 P. 963], it was said: "An in-

fant may be so very young that, like an idiot or lunatic, no. negligence may legally be imputed to him." And in *Parra* v. *Cleaver,* 110 Cal.App. 168 [294 P. 6], after quoting this language from *Todd* v. *Orcutt,* it was said: "As Jose Parra was only sixteen months of age at the time of his injury and as there was no evidence indicating that he had sufficient mind or understanding to enable him to be guilty of contributory negligence, and as the record is barren of any evidence pointing to contributory negligence on his part, we cannot charge him with it." See, also, *Gonzales* v. *Davis,* 197 Cal. 256 [240 P. 16], wherein it was held in effect that a child of five could not be guilty of contributory negligence. While there is no precise age at which, as a matter of law, a child is to be held accountable for his actions, it is obvious that a child of two years and eight months of age could not have sufficient capacity to be guilty of contributory negligence which would bar its parents' recovery for damages for its death; and that it was error to have so instructed the jury.

Nor did the fact that some of the instructions on contributory negligence were proposed by plaintiff preclude the trial court from granting a new trial on this particular ground. In dealing with a similar situation in *Springer* v. *Sodestrom,* 54 Cal.App.2d 704 [129 P.2d 499], the court said: "The plaintiffs themselves submitted instructions on the issue of contributory negligence, and the case was tried by both sides on the theory that the question of contributory negligence was an issue in the case, and as such, was a question of fact for the jury. Defendant contends that, since the plaintiffs proposed instructions on the issue of contributory negligence, they are therefore precluded from predicating error on the giving of such instructions. (*Collins* v. *Graves,* 17 Cal.App.2d 288 [61 P.2d 1198]; *Ray* v. *Kennedy,* 24 Cal.App. 2d 583 [76 P.2d 147]; *Charves* v. *San Francisco-Oakland Terminal Railways,* 44 Cal.App. 221 [186 P. 154]; *Gray* v. *Ellis,* 164 Cal. 481 [129 P. 791].) There can be no doubt that under some circumstances the offering of instructions on an issue constitutes a waiver, but that rule does not restrict the power of the trial court to grant a new trial. If error appears in the record, the power of the trial court to grant a new trial is not limited by the conduct of the parties in inviting such error. On an appeal from a judgment, defendant's position would be tenable, but not so when an appeal is from an order granting a new trial. (*Nieves* v. *Vigolino,*

135 Cal.App. 763 [27 P.2d 916]; *Pope* v. *Wenisch*, 109 Cal. App. 608 [293 P. 622]; *Weaver* v. *Shell Oil Co. of California*, 129 Cal.App. 232 [18 P.2d 736].) As was stated in *Nieves* v. *Vigolino, supra*, page 765, '. . . where the jury has been erroneously instructed and the trial court has determined that the error was prejudicial, we do not believe that it is precluded from granting a new trial merely because there may be said to be a waiver or an estoppel on the part of one of the parties. (*Weaver* v. *Shell Oil Co., supra*.) To hold otherwise would mean that the trial court, by reason of the action of the parties, would be powerless to correct what might be an obvious miscarriage of justice.' "

The third major ground upon which the trial court was justified in granting a new trial relates to the ruling granting defendants leave to amend the answer to set up a new special defense, to wit, contributory negligence on the part of the child's father.

The application to amend was made just before defendants called their last witness. Until then the only charge of contributory negligence involved in the trial was directed against the deceased child. Such charge was embodied in a special defense, the allegations of which were ''That the said Joyce Anne Conroy [the child] was careless and negligent in and about the matters set forth in the complaint . . . which carelessness and negligence were the proximate cause of the alleged damages, if any, and if any damage was sustained it was caused solely through the negligence and carelessness of the said Joyce Anne Conroy, and through no other cause''; and defendants asked that they be granted leave to amend those allegations by inserting the words ''and plaintiff'' after the words ''Joyce Anne Conroy'' and changing the verb ''was'' to ''were.'' Plaintiff strenuously objected to the granting of such leave on several grounds, among them being that the application came too late; that if the amendment were allowed it would change the theory on which the case had been tried and would bring in a new defense which plaintiff at that time was not prepared to meet; furthermore, that he had prepared no instructions on such a defense. The leave was granted, and both parties proposed instructions on that issue, which the court gave; but defendants did not thereafter conform to the leave granted because no amended pleading of any kind was thereafter filed nor did they make any

amendment of record. Thus, so far as the pleadings go, no issue of contributory negligence on the part of the father of the child was ever legally tendered.

It is a general rule that mere leave to amend does not in itself operate as an amendment, and if a formal amendment is not filed the issue is not properly pleaded (*Central Cal. Creditors' Assn.* v. *Seeley,* 91 Cal.App. 327 [267 P. 138]; see cases collected in 49 C.J. p. 548, 549.) It is true that where the motion to amend is made during the trial and thereafter the case is tried as if the amendment had been made, the parties by their actions are estopped and cannot later complain that no formal amendment was in fact made (*Greenwood* v. *Greenwood,* 112 Cal.App. 691 [297 P. 589].) Here, however, it cannot be held that the cause was tried as if the amendment had been made because defendants did not make their application to amend until nearly the end of the trial. The nature of the amendment was not one to conform to the proof, but was one whereunder defendants sought to bring in an entirely new defense, which under well settled rules, to be considered by the jury at all, must be affirmatively pleaded.

In the foregoing state of the record the trial court was justified in concluding that plaintiff was entitled to a new trial either upon the ground that no issue of contributory negligence on the part of the child's father had been pleaded, and that therefore the instructions given on that defense were improper; or upon the ground that under all the circumstances it was error for the court to grant leave to amend at the end of the trial so as to bring in a new defense.

For the several reasons above stated, it cannot reasonably be held that the trial court abused its discretion in granting a new trial. The order is affirmed.

Peters, P. J., and Ward, J., concurred.