[Civ. No. 20783. Second Dist., Div. Three. Aug. 15, 1955.]

RICHARD CLARENCE KADING, a Minor, etc., Appellant, v. HOWARD R. WILLIS et al., Defendants; SPARK-LETTS DRINKING WATER CORPORATION (a Corporation), Respondent.

Cecil W. Collins, and Gordon B. Friesen for Appellant.

Schell, Delamer & Loring for Respondent.

ASHBURN, J. pro tem.*—Appeal from judgment for defendant entered upon verdict of jury. Plaintiff Richard Clarence Kading (commonly known as Dickie) sues through his guardian *ad litem* for damages for personal injuries received when he, aged 5½ years, was run over by a delivery truck of defendant Sparkletts Drinking Water Corporation which was being operated by its servant, Howard R. Willis. The cause was dismissed as to Willis, who had been named as a defendant, and went to trial upon issues raised by the amended complaint and defendant Sparkletts' answer to same.

Appellant argues first that the evidence is insufficient to support the verdict. In examining this point we must follow the familiar rule that all evidence favorable to respondent and all reasonable inferences tending to support the verdict must be accepted as established. (*Guardianship of Kentera,* 41 Cal.2d 639, 645 [262 P.2d 317] ; *Marino* v. *Valenti,* 118 Cal.App.2d 830, 840 [259 P.2d 84].) Thus viewed the evidence reveals that Willis on the day of the accident, August 1, 1952, was employed by Sparkletts and engaged in delivering bottled water for it; he stopped at the home of the parents of plaintiff at about the noon hour and there made a delivery; when he went into the house some four to six or seven children followed him in, drank water, went out with him and then got on the truck while he was putting a bottle in place. The group included plaintiff Dickie (5½ years of age), his brother David (8 years old), friend Jerry Jancarik (8 years old), and several other boys of similar age. The Kading residence is on the east side of Glen Iris Street, which runs north and south. The truck was at the east curb and headed north when in front of the Kading home.

*Assigned by Chairman of Judicial Council.

When Willis saw the boys on the truck they were standing on the running board looking in the window; he told them to get off the truck and back on the sidewalk, that he would see them again in two weeks; they reluctantly obeyed and got onto the sidewalk, where Willis saw them as he drove away. He went up the street to the Brown home, some 400 to 500 feet north of Kading's; it is situated on the west side of the street; he crossed the center line, parked at the left or west curb, headed north, and made a delivery at the Brown house. When he went in he saw no children around, and when he came out some 5 to 10 minutes later, he saw none; there were none on the sidewalk or at the curb. He entered the truck on the left side, looked in the mirror on the right side, saw no traffic and no boys. That mirror was so installed and adjusted that it would show traffic and the water bottles on the truck, and out about 4 to 5 feet beyond the bottles; but it did not reveal the running board along the side, for it was below the bottles. The mirror could be so adjusted as to show the running board but that would cut out the view of traffic in the street. Willis therefore had no way of knowing whether a child rode on the running board from Kading's to Brown's, or whether one was still there when he stopped for the Brown delivery, but he was sure that all of them got off the truck and onto the sidewalk before he left Kading's. And, as above stated, he saw none of them near the Brown house or near his truck parked in front of it, not until after the accident. The truck is so constructed that the driver cannot see through the rear window; from his seat the driver could not see the running board; he could have stuck his head out the right door to look down and around; but, having nothing to put him on notice of proximity of children, he started the truck in low gear, going north at 2 to 3 miles an hour and toward the center of the street; before he got there or shifted from low gear he heard a scream and stopped, having gone not over 15 to 20 feet. He left the truck, which was just across the center line of the street, and saw Dickie lying about 10 feet behind the vehicle; he was complaining about his stomach and apparently had been run over by the truck receiving an injury to the pelvis. Willis carried him to the parking. When Dickie was seen lying in the street his brother David with with him, but Willis did not know where the boy had come from, or when, and he saw no other boys at that time. It does not affirmatively appear, except perhaps circumstantially, whether Dickie was

on the running board and fell off, or was in the street and was run into by the side of the truck, or himself ran or jumped into or on it. But the jury could have found from the circumstantial evidence that the boy was on the running board and fell off when the truck started.

Defendant tried the case upon the theory that Dickie was on the truck and was a trespasser. Plaintiff's counsel apparently took the position, which they now urge, that he was not a trespasser because he was not on the truck and that the driver Willis failed to use ordinary care, as he was bound to do, to discover Dickie's presence close to the truck and to protect him from injury; alternatively, that even if the boy was upon the truck the driver was upon notice of that possibility and obligated to use reasonable care to ascertain whether such was the fact and if he found the boy there was required to use ordinary care to inflict no injury upon him.

The rule now generally accepted in this state and elsewhere is that the operator of a motor vehicle who is or should be cognizant of the proximity of children must exercise ordinary care to discover their presence upon or near his vehicle and upon such discovery to use ordinary care to avoid inflicting injury upon them; and this rule applies regardless of the infant's status as trespasser, licensee or invitee.

"As the courts have frequently said, it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possessing normal and mature faculties. Their conduct is unpredictable and one operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. (*Shannon* v. *Central-Gaither U. School Dist.,* 133 Cal.App. 124 [23 P.2d 769].)

The presence of children is in itself a warning requiring the exercise of care for their safety. (*Seperman* v. *Lyon Fire Proof Storage Co.,* 97 Cal.App. 654 [275 P. 980].) Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury." (*Conroy* v. *Perez,* 64 Cal. App.2d 217, 224 [148 P.2d 680].) To the same effect are *Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30 [286 P.2d 21]; *Frederiksen* v. *Costner,* 99 Cal.App.2d 453, 456 [221 P.2d 1008]; *Freeland* v. *Jewel Tea Co.,* 118 Cal.App.2d 764, 768-769 [258 P.2d 1032]; *Marino* v. *Valenti,* 118 Cal.App.2d 830, 842 [259 P.2d 84]; *Gorzeman* v. *Artz,* 13 Cal.App.2d 660, 662 [57 P.2d 550]; *Parra* v. *Cleaver,* 110 Cal.App. 168, 171 [294

P. 6]; 30 A.L.R.2d 5, 102-105, anno. The following cases are not opposed to this rule, although some language used therein, applicable to the factual situation under consideration, may so indicate at first reading: *Wilson* v. *City of Long Beach,* 71 Cal.App.2d 235, 240-243 [162 P.2d 658, 163 P.2d 501]; *Allred* v. *Pioneer Truck Co.,* 179 Cal. 315 [176 P. 455]; *Bakos* v. *Shell Co. of Calif.,* 115 Cal.App. 142, 144 [300 P. 982]; *Johnston* v. *Associated Terminals Co.,* 13 Cal. App.2d 121, 122 [56 P.2d 259]; *Norland* v. *Gould,* 200 Cal. 706, 709 [254 P. 560]. ■ Ordinarily the question of whether a driver should be alerted to the necessity of looking for the presence of children is one of fact for the jury to solve, as is also the question of whether that duty, once it arises, has been properly performed. This was the holding in *Frederiksen* v. *Costner, supra,* 99 Cal.App.2d 453, at 458, and *Freeland* v. *Jewel Tea Co., supra,* 118 Cal.App.2d 764 at 769. In our judgment respondent's cited cases of *Coffey* v. *Oscar Mayer & Co.,* 252 Wis. 473 [32 N.W.2d 235]; *Ostrander* v. *Armour & Co.,* 176 App.Div. 152 [161 N.Y.S. 961]; *Abbott* v. *Railway Express Agency,* (4 Cir.) 108 F.2d 671, which hold as matter of law that the driver's conduct was not negligent in circumstances resembling those at bar, cannot be held controlling in the face of the California rulings we have cited. The facts at bar, above summarized, presented a jury question which was decided in favor of defendant, and it cannot be said as a matter of law that the verdict was without support in the evidence.

Appellant's counsel argue in this connection that there is no evidence that Dickie was on the truck; that it is presumed he was not there; that the truck was on the wrong side of the street and that, as it struck the boy on that part of the street, the driving and parking contrary to Vehicle Code, section 525, and Los Angeles Municipal Code, section 80.49, was negligence *per se* which constituted as matter of law the proximate cause of the accident. Section 525 requires vehicles to be driven upon the right half of the roadway and section 80.49 requires parked vehicles to be headed in the direction of traffic with the right wheels within 18 inches of the curb. (No question is raised here as to the validity of said municipal code section.) Respondent impliedly concedes the point that violation of these sections is negligence as matter of law. ■ But counsel say the question of proximate cause was one of fact which was properly submitted to the jury. The court instructed upon proximate cause at

plaintiff's request, and gave a specific one concerning violation of law at defendant's behest. This was correct. It was held, upon similar facts, that proximate cause was a question of fact in *Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674, 686 [102 P.2d 422]. See also *Hilyar* v. *Union Ice Co.*, *supra*, 45 Cal.2d at 38; *Favalora* v. *Oden*, 13 Cal.App.2d 659 [57 P.2d 541]; *Murphy* v. *St. Claire Brewing Co.*, 41 Cal. App.2d 535, 539 [107 P.2d 273]; *Hickson* v. *Beitel*, 103 Cal. App.2d 391, 394 [229 P.2d 821]; *Rabe* v. *Western Union Tel. Co.*, 198 Cal. 290, 297 [244 P. 1077]; *Williams* v. *McDowell*, 32 Cal.App.2d 49, 55 [89 P.2d 155]; *Farole* v. *Eichman*, 39 Cal. 2d 822, 824 [249 P.2d 261]; *Van Cise* v. *Lencioni*, 106 Cal. App.2d 341, 346 [235 P.2d 236].

Oblique recognition of the propriety of leaving the question to the jury in this case appears from the concluding argument of the matter in the opening brief. "The weight of the evidence would indicate that the violation of law by the defendant was the proximate cause, or contributed in some degree, to plaintiff's injury."

It is apparent that the battle in the trial court was waged chiefly over the question of trespasser *vel non* and that defendant's counsel invoked the rule that no duty is owed a trespasser other than refraining from willful or wanton injury to him—a doctrine which has been considerably modified with respect to trespassers whose presence is known, even though they be adults. (*Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91, 97 [219 P.2d 73]; *Hession* v. *City & County of San Francisco*, 122 Cal.App.2d 592, 601 [265 P.2d 542]; *Boucher* v. *American Bridge Co.*, 95 Cal.App.2d 659, 666-669 [213 P.2d 537].) The court said in *Fernandez* v. *American Bridge Co.*, 104 Cal.App.2d 340, at page 343 [231 P.2d 548]; "The California rule seems to be that, regardless of the status of a plaintiff as licensee, trespasser or invitee, where defendant knew, or should have known, of plaintiff's presence, the duty of reasonable care was owed to him." Appellant complains of the giving and the refusal of certain instructions upon this subject. Although counsel alleged in the complaint that plaintiff was near (not on) the truck and stoutly contended, as on this appeal, that the evidence does not warrant an affirmative finding that he was trespassing, they were confronted with the issue and with the need of correct instructions on the subject.

To that end they requested an instruction reading as follows: "If you should find that plaintiff, a five-and-one-half-

year-old child, was a trespasser upon the property of defendant, this fact in itself does not constitute a bar to recovery." The court declined to give it. But, at defendant's request, gave the following: "Before plaintiff can recover against defendant, it must first be established that the defendant breached a duty owed to plaintiff. Therefore, you must first decide the status of plaintiff immediately preceding the accident. If plaintiff had gotten upon the truck of the defendant without being expressly or impliedly invited so to do, and defendant's driver was unaware of his presence, then plaintiff was a trespasser and defendant owed no duty to plaintiff except to refrain from intentional harm or from willful reckless or wanton injury. There is no liability for mere failure to exercise ordinary care under such circumstances. It is only if you find that plaintiff was not upon said truck that the ordinary rules of negligence apply, and the fact that I have instructed you on the ordinary rules of negligence is not to be taken by you as an indication on the part of this court that the plaintiff was or was not a trespasser. The burden of proof rests upon the plaintiff to establish by a preponderance of the evidence his status at the time of and immediately preceding the happening of this accident." These rulings in effect denied plaintiff, if on the truck, the benefit of discovery or of reasonable activity to that end on the part of the truck driver, plaintiff being only 5½ years old. ■ Of course, each party is entitled to proper instructions upon any theory of the case which his evidence substantially supports. (*Gilbert* v. *Pessin Grocery Co.*, 132 Cal.App.2d 212, 222 [282 P.2d 148].)

■ Plaintiff's evidence, which the jury could have accepted if so disposed, was to the following effect. After the boys were ordered off the truck at the Kading home Dickie, David and Jerry followed it up the street, on the east sidewalk and then crossed over to the west side where the truck was parked. They were nearing it when Willis took the water into the Brown house. When he came out David was on the grass but could not then see Jerry and Dickie who were on the other side of the truck. The driver said to get away from the truck, David did so, and Jerry apparently heard and came around onto the sidewalk; but not Dickie. As David and Jerry were standing on the sidewalk Willis put the bottle on the left side of the truck and entered on that side. Although the boys were on the running board at Kading's and had insisted on riding up to Brown's, leaving the truck only

upon Willis' command, and although David was so close when he came out of Brown's that he ordered him back, Willis did not go to the rear or the right side to see if any more children were upon or so close to the truck as to be in danger; at the Kading house there were four to six children around the truck; now there were only two in sight. Where were the others? As the driver was about to enter the truck he saw that there was no traffic near; looked through the right window as he entered and saw nothing; in the right mirror he saw there was no approaching traffic; he could not see the running board from his seat; did not stick his head out or adjust the mirror so it would reveal the running board and adjacent ground; such adjustment would have rendered him unable to see traffic but he had seen that there was none in the vicinity. He did nothing to ascertain whether there was any little boy on the right side of the truck or so close to it as to be in danger when he pulled out from the curb. There were some 22 children living on Glen Iris between the Kading and Brown houses, and Willis had been delivering on that street for at least two weeks, and probably six months. The jury could have found that Willis was thereby put on notice of the probability of children in the immediate vicinity of his truck at any time. On this occasion he started diagonally toward the center of the street and almost immediately, after moving 6 to 7 feet, heard a scream, stopped, got out and found Dickie right behind the back wheel, and his brother David was with him then. This combination of alleged facts could have been accepted by the jurors as satisfactory proof. True, David and Jerry were impeached, but it was for the jurors to determine the effect of the impeaching testimony. Counsel agree that it does not constitute independent evidence as David and Jerry are not parties to the action. (See *Kroplin* v. *Huston,* 79 Cal.App.2d 332, 343 [179 P.2d 575].) Dickie was not permitted to testify, being held not qualified because of his tender years. There were no other witnesses to the immediate facts of the accident. There was sufficient substantiality in plaintiff's showing to require the giving of correct instructions, upon appropriate request, pertaining to the duty owed to Dickie if, as claimed, he was not upon the truck and also if he was in fact a trespasser.

The instruction (above quoted) to the effect that the mere fact of a trespass by Dickie, if one there was, would not bar recovery should have been given. This follows from application of *Frederiksen* v. *Costner, supra,* 99 Cal.App.2d

453, and other authorities cited in the same connection *supra*. But the refusal of this instruction would have been less prejudicial if the other instruction on the subject (also quoted above) had not been vitally erroneous.

 Appellant complains first of that phase of it which pertains to burden of proof. It is the last sentence, which should be read in connection with the first two, thus: "Before plaintiff can recover against defendant, it must first be established that the defendant breached a duty owed to plaintiff. Therefore, you must first decide the status of plaintiff immediately preceding the accident. . . . The burden of proof rests upon the plaintiff to establish by a preponderance of the evidence his status at the time of and immediately preceding the happening of this accident." There is no error in this, for plaintiff's status as trespasser, licensee, invitee, or little boy in immediate presence of danger and needing protection from others, determines the nature and quantum of care due him. "It is incumbent on plaintiff to establish by competent evidence the existence of a duty owing to him or the person injured, and a breach or failure to perform that duty. Thus, where plaintiff claims that the injured person was an invitee on defendant's premises at the time of the injury, the burden is on plaintiff to establish that status; it is incumbent on him to establish an invitation by one with authority and, if part of his case, that defendant was negligent under the circumstances in extending it. Where the injured person is a licensee or trespasser, the burden is on plaintiff to establish such negligence or misconduct as is necessary to impose liability in view of the status of the injured person." (65 C.J.S. § 208, pp. 966, 967.) This burden may be carried by direct or circumstantial evidence.

 The rest of the instruction is erroneous. We again quote it. "If plaintiff had gotten upon the truck of the defendant without being expressly or impliedly invited so to do, and defendant's driver was unaware of his presence, then plaintiff was a trespasser and defendant owed no duty to plaintiff except to refrain from intentional harm or from willful reckless or wanton injury. There is no liability for mere failure to exercise ordinary care under such circumstances. It is only if you find that plaintiff was not upon said truck that the ordinary rules of negligence apply, and the fact that I have instructed you on the ordinary rules of negligence is not to be taken by you as an indication on the part of this court that the plaintiff was or was not a trespasser." The first

two sentences tell the jury that the mere fact of a trespass by Dickie relieved the driver of any obligation of due care toward him unless his presence as a trespasser was actually known. Thus it excludes any obligation of Willis, though put on notice of the probability of such trespass by a little boy, to use any care to discover his proximity or to protect him against his own apparent inability to recognize the danger of his situation. (The court instructed that plaintiff was incapable of contributory negligence.) The statement that ''There is no liability for mere failure to exercise ordinary care under such circumstances'' was definitely erroneous and misleading, emphasizing an absence of any duty to the child trespasser, before or after his acquiring that status, except to refrain from willful or wanton injury. The error is then compounded by saying in substance that, whether Dickie's presence on the truck was known or unknown, whether the probability of such presence was or should have been recognized by the driver, no duty of reasonable care arose unless ''you find that plaintiff was not upon said truck.'' This definitely excludes the rule of the Frederiksen and similar cases, *supra*. And plaintiff was entitled to the benefit of that rule, which was inescapably excluded by the instruction given.

█ The fact that the court had given at plaintiff's request a general instruction concerning the duty of persons dealing with children (BAJI 148 quoted in footnote[1]), does not cure the error in the one now under consideration for it deals with the heart of the case and says, in effect, that the general rule does not apply if under any circumstances Dickie was on the truck and his presence unknown. █ ''It must be assumed that the jury understood the instructions and correctly applied them to the evidence.'' (*Zuckerman* v. *Underwriters at Lloyd's, London*, 42 Cal.2d 460, 478 [267 P.2d 777].)

Respondent argues that appellant cannot complain because he requested no specific instruction embodying the application of the correct rule. █ It is true that one who would complain of an absence of instruction on a material matter or of

---

[1] ''Ordinarily it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties. One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child may result.''

need of clarification or elaboration in an instruction which is correct as far as it goes must tender an appropriate request or be precluded from claiming error, but that rule does not apply to an erroneous instruction which is given at the instance of the opposing party. (*Colgrove* v. *Lompoc Model "T" Club, Inc.*, 51 Cal.App.2d 18, 24 [124 P.2d 128] ; *Tabata* v. *Murane*, 24 Cal.2d 221, 228 [148 P.2d 605] ; *Sexton* v. *Brooks*, 39 Cal.2d 153, 158 [245 P.2d 496].)

The error in the instruction just discussed is of such gravity as to require a reversal. In view of the necessity of a new trial certain other contentions of appellant will be examined.

 Counsel contend that the court, without any request from appellant and on its own motion, should have instructed the jury that the evidence received by way of impeachment of Jerry Jancarik and David Kading, neither being a party to the action, does not constitute and cannot be considered as affirmative evidence of the facts asserted in the impeaching statements. Respondent concedes the substantial proposition, but contends properly that the court was not obligated to give such instruction unless requested by appellant. It is so held in *Ornales* v. *Wigger*, 35 Cal.2d 474, 478, 481 [218 P.2d 531]. This is because, in a civil case, "The trial court need not of its own motion give special instructions in the absence of a request therefor by counsel." (*Id.*, p. 479.)

 The same contention is made by appellant concerning the court's failure to instruct concerning presumptions declared in Code of Civil Procedure, section 1963, subdivisions 1 and 33. The first declares a person presumed to be innocent of crime or wrong, and the second a presumption that the law has been obeyed. Counsel requested no instruction on this subject and the Ornales case, *supra*, is controlling here. Moreover, such an instruction if given would have been misleading, for it would inject into the case a false issue, that of responsibility of the plaintiff for his own conduct, when it is conceded that his tender years spell lack of any responsibility at all.

 Appellant's complaint of error in refusing his offer of proof of implied invitation to children to get upon the truck is without merit. During the testimony of Mrs. Jean Magno, after certain adverse rulings, counsel made this offer: "MR. COLLINS: I offer to prove by the testimony of this witness that if she were permitted to testify she would testify that for a period of approximately two years prior to the accident she has seen the driver of the Sparkletts Water Company per-

mit the children to get on his Sparkletts truck, permit them to help him carry the bottles in, and he has picked them up off the truck and set them on the parkway before he left, over a period of time at least, at least two years' time.'' This was in keeping with the allegations of the complaint. But Mrs. Magno testified that on this occasion, when he. came into the Kading house, the driver told the children not to get around the truck; Jerry Jancarik said this occurred at the Kading home; and David Kading testified that it occurred at his own home and in front of the Brown house. The driver Willis said it occurred at the first stop, but he saw no children near Brown's. These were the only witnesses who touched on the subject. In view of the uniform evidence that the driver on this occasion told the boys to stay away from the truck, any previous express or implied invitation by this or any other driver to get upon the vehicle became wholly immaterial. There was no error in the ruling.

Because of the erroneous instruction above discussed the verdict cannot stand.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 13, 1955. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.