[Civ. No. 24012.   Second Dist., Div. Two.   Dec. 14, 1959.]

DOUGLAS JONES et al., Appellants, v. MILDRED R. BROWN et al., Respondents.

Magana & Olney and Arthur L. Stein for Appellants.

Moss, Lyon & Dunn, Fulton W. Haight and Henry F. Walker for Respondents.

ASHBURN, J.—Appeal from judgment of nonsuit in personal injury action. Plaintiff Dennis Jones, a 4-year-old pedestrian, was injured by defendant Brown's automobile. His father, Douglas Jones, is a coplaintiff. The sole issue was and is negligence of Mrs. Brown in driving her own automobile. ██ In examining the trial court's ruling we must be

governed by the following settled principles. " 'Under well-established rules we must, in considering whether the judgment of nonsuit was proper, resolve every conflict in their testimonies in favor of plaintiff, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiff, and accept as true all evidence adduced, direct and indirect, which tends to sustain plaintiff's case.' (*Lashley* v. *Koerber*, 26 Cal. 2d 83, 84 [156 P.2d 441].)" (*Singer* v. *Marx*, 144 Cal.App.2d 637, 640 [301 P.2d 440].) See also *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 35 [286 P.2d 21], and similar cases too numerous to mention.

■ The court "properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material. [Citations.]" (*Nevarov* v. *Caldwell*, 161 Cal.App.2d 762, 777 [327 P.2d 111].)

■ All evidence in the record must be considered regardless of whether it is intrinsically competent and whether it was admitted over objection or without objection. ■ "[W]e must take the record as we find it. We cannot strike or disregard any evidence favorable to the prevailing party merely because it was erroneously received. [Citations.]" (*Waller* v. *Southern Calif. Gas Co.*, 170 Cal.App.2d 747, 757 [339 P. 2d 577].)

■ Evidence elicited upon examination under section 2055, Code of Civil Procedure, is to be considered upon motion for nonsuit so far as it is favorable to plaintiff. (*Estate of Lances*, 216 Cal. 397, 404 [14 P.2d 768]; *Crowe* v. *McBride*, 25 Cal.2d 318, 319 [153 P.2d 727]; *Karstensen* v. *Western Transportation Co.*, 93 Cal.App.2d 435, 438 [209 P.2d 47].)

Indulging in inferences favorable to plaintiffs and rejecting those favorable to defendant the facts appear to be as follows.

The accident occurred at about 2:30 p.m. on October 15, 1955, a Saturday, at the intersection of Speedway and Dudley Avenues in the Venice area of Los Angeles. Speedway runs north and south and carries only southbound traffic. Dudley runs east and west and is also a one-way street. The intersection is a blind one. Mrs. Brown was driving south on Speedway. On the northwest corner was a "laundromat" in a building which bounded Speedway on the west, there being no intervening sidewalk. Speedway is the first street east

of the ocean and runs, roughly, parallel with it. Everything on Mrs. Brown's right and one short block away was beach and ocean. The Jones family lived on the southwest corner of the intersection and their three children could reach the beach without crossing the Speedway (which name is the survival of the horse and buggy days, the street is in no sense a speedway within the modern concept). Many children lived in that area and played on and near the beach. This fact was observable to one driving on the Speedway. Defendant Brown had driven through this area in all seasons of the year and had noticed children going to and from the beach. On the day of the accident, Saturday afternoon, there were a lot of children playing at the beach and in the immediate vicinity. Mrs. Brown was driving slowly to the south, somewhere from 10 to 15 miles an hour. As she neared Dudley Avenue a child ran out from the sidewalk of the laundromat building, the south side, and crossed diagonally in front of her, angling to the northeast. As soon as she saw him she made a complete stop, stalling her engine in the process. The boy passed safely in front of her car. Mrs. Edna Einstoss, who was riding in the front seat with defendant, saw the boy when the car was about 15 feet north of the corner, and after he passed exclaimed, "Oh, my God, Millie, if you hadn't been going so slow, you would have struck that child." Defendant said: "Did you see that? Where did that boy come from?" She sounded no horn and made no effort to learn whether there were other children who were likely to do the same thing, and she did not see plaintiff, a 4-year-old boy, when he came out from the same sidewalk, angling in the same direction as the first boy. She was then engaged in starting the car or shifting gears manually. Defendant never saw plaintiff until the collision occurred. Although she and Mrs. Einstoss and witness Montgomery (who was in a truck following defendant's car) said that plaintiff ran into the right side of the car with a thud, plaintiff himself testified (he was then 7 years old) that he was hit by the front of the automobile while running across the street to watch a family friend "Bernie" polish his car on the lot at the northeast corner of the intersection; that he did not walk into the Brown car, was knocked down by the car, which was moving. On hearing the impact Mrs. Einstoss said: "What was that? I bet it must be another child." Mrs. Brown alighted from her vehicle and picked up plaintiff; she was holding him in her arms when his mother arrived (coming from the apartment building on the southwest corner of the

intersection). She saw that defendant was holding Dennis. Her daughter Christine, aged 8½, did not see the collision but heard the brakes squeal and heard a bump immediately afterward, turning she saw the defendant holding Dennis and standing in front of the car. It was just a little way past the corner, the west line of Speedway. When Mrs. Jones arrived defendant said: "Is this your child?" "Yes." "I hit him. I am sorry, but I didn't see him." The father, Douglas Jones, telephoned defendant on the following day and asked her if she was the lady that struck his little boy. She said "Yes" and "I didn't sleep after hitting the boy" or something like that.

Dennis' injuries were principally on the left side of his face and head. The hospital record shows a large bruise and abrasion on the right side of the forehead and the left parietal scalp, also a large bruise on the medial side of the left elbow. The tentative diagnosis was "probable concussion with abrasions to head, bruised left elbow." Under the "Treatment and Progress Record" is "bruises and abrasions over forehead and left elbow." Also, "abrasions on right side of forehead in left parietal region. Left elbow bruised and swollen." (The claim of plaintiffs is that Dennis' injuries caused "Narcolepsy" or "Sleep Epilepsy.") His clothes were torn on the left side but had not been in that condition before the accident.

Dennis was alone, but defendant said that "Just as I was going to shift into second gear, there were some children that ran out"; also, "There may have been two besides his brother." After the accident she was aware of many children playing in that area, about six of them, and they gathered around her at the scene. It is fairly inferable that Mrs. Brown knew that the immediate vicinity was frequented by children, which fact charged her with a special duty of care incident to the proximity of unpredictable youth. ▮▮ *Kading* v. *Willis*, 135 Cal.App.2d 82, 87 [286 P.2d 861]: " 'As the courts have frequently said, it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possessing normal and mature faculties. Their conduct is unpredictable and one operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. (*Shannon* v. *Central-Gaither U. School Dist.*, 133 Cal.App. 124 [23 P.2d 769].) ▮▮ The presence of children is in itself a warning requiring the exercise of care for their safety. (*Seperman* v. *Lyon Fire Proof Storage Co.*,

97 Cal.App. 654 [275 P. 980].) ▆▆▆ Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury.' (*Conroy* v. *Perez,* 64 Cal.App.2d 217, 224 [148 P.2d 680].) . . . [P. 88.] ▆▆▆ Ordinarily the question of whether a driver should be alerted to the necessity of looking for the presence of children is one of fact for the jury to solve, as is also the question of whether that duty, once it arises, has been properly performed." *Hilyar* v. *Union Ice Co., supra,* 45 Cal.2d 30, 35: "From the child's statement that the truck hit him and ran over his back, it could have been reasonably inferred that he was either in front of the truck as it made the turn, or slightly to its left. From defendant Ingram's testimony that he did not see the child, it could have been inferred that he did not see the child because he was not exercising the care commensurate with the danger to be avoided in that he knew small children played in the area and knew, or should have known, that children are unpredictable. . . . In *Conroy* v. *Perez,* 64 Cal.App.2d 217, 224 [148 P.2d 680], it was held that 'The presence of children is in itself a warning requiring the exercise of care for their safety. (*Seperman* v. *Lyon Fire Proof Storage Co.,* 97 Cal.App. 654 [275 P. 980].) Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury. (See 2 Cal.Jur. 10-Yr. Supp., p. 454.)' "

▆▆▆ A jury well might infer that after defendant saw one boy run across the street immediately in front of the automobile, so close that she had to kill her engine to save him from his own folly, she should have been particularly alert to discover another boy virtually upon his heels. But she went forward without making any such observation or giving any warning. Defendant told the police, "I just surmised they were following the other ones." It is not clear just what she meant by this, but if she did not make this surmise before Dennis appeared the jury reasonably could infer that she should have done so. The blind feature of the intersection also imposed the duty of special care at the moment. No horn was sounded. It is a question of fact whether a horn signal did not constitute a minimum of care exacted of her at that juncture of affairs, and whether failure to perform that duty was the proximate cause of the accident.

This matter was considered in *Hilyar* v. *Union Ice Co.,* *supra,* 45 Cal.2d 30, 37, 38, 39: "Section 671, subdivision (b) of the Vehicle Code provides that the driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. Whether under the circumstances here presented it was 'reasonably necessary' to sound the horn to 'insure safe operation' should have been a question of fact for the jury. In *Ducat* v. *Goldner,* 77 Cal.App.2d 332, 335 [175 P.2d 914], it was held that 'appellant had no right to assume that the road was clear but it was his duty to be vigilant and to anticipate the presence of others in the highway. The fact that he did not know that respondent was in the street is no excuse for his failure to give warning. . . . Under the circumstances here presented, whether or not defendant driver's failure to sound the horn, or his failure to look more closely for children in his way, constituted the proximate cause of plaintiff's injuries should have been submitted to the jury. . . . In *Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497, 500 [259 P.2d 1010], where a judgment of nonsuit was reversed, and where there were no eyewitnesses, it was said: ' "It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other that such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom. . . ." ' (*Katenkamp* v. *Union Realty Co.,* 36 Cal.App.2d 602, 617 [98 P.2d 239].) 'The plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly derivable from the facts proved.' . . . Here we have the child's statement to the officers and his mother that the truck ran over him; we have the driver's statement 'I hit him!'; we have the driver's statement of his knowledge of children playing in the area and that he did not sound his horn, and that he did not look to the right or left as he made his left-hand turn into 'B' street. From this evidence it is reasonably inferable that had he looked, he would have seen the plaintiff, or that had he sounded his horn, he would have warned the child away from the moving truck."

Starting her car after the first boy had passed without looking to see if others were coming, failing to give a horn signal, running into plaintiff without seeing him at all,—these things, combined with the other facts above related, inevitably created a question of fact for the jury to consider. Arguments deduced from testimony favorable to defendant

cannot prevail against that supporting plaintiffs' complaint, for such testimony must be disregarded upon this inquiry.

Judgment of nonsuit is reversed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied January 11, 1960, and respondents' petition for a hearing by the Supreme Court was denied February 10, 1960.