[Civ. No. 25297. Second Dist., Div. Two. July 24, 1961.]

SCOTT BRADLEY HUETT, a Minor, etc., Appellant, v. RICHARD JERD GOOD et al., Respondents.

Arlo E. Rickett, Jr., for Appellant.

King & Mussell for Respondents.

ASHBURN, J. — Plaintiff, Scott Bradley Huett, aged 3, brought this action for damages, through his guardian *ad litem,* for personal injuries sustained when he was struck by an automobile driven by defendant Richard Jerd Good and

owned by defendants Harold W. Good and Roberta J. Good. A nonjury trial resulted in judgment for defendants.

Appellant's major claim is that defendant was negligent as a matter of law; short of that counsel's argument that "the driver of the automobile was negligent" amounts only to an invitation to this court to review the evidence contrary to settled precedent. ■ In appraising appellant's assertion of insufficiency of the evidence in this regard we are bound by the familiar rules thus stated in *New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987] : "The appellate court must accept as established all facts and all inferences favorable to respondent which find substantial support in the evidence. ■ 'And where appellant urges the insufficiency of the evidence to sustain the findings . . . the rule is that, "Such contention *requires* [*appellant*] *to demonstrate* that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].) (Emphasis added.) ■ It is said in *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183], that: "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. ■ When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' ' (*Hartzell* v. *Myall,* 115 Cal.App.2d 670, 673 [252 P.2d 676].) ''

The accident happened on Sunday, February 22, 1959, about 2:15 p. m. The minor, hereinafter referred to as appellant, was playing in his front yard or on the sidewalk on the east side of Kathryn Street which runs north and south in the city of Pomona. Near the southwest corner of the lot on which the Huett family home is located is a driveway opening. The Huett station wagon was parked in front of the home on the east side of Kathryn, next to the curb heading south, approximately 3½ feet north of the driveway. Approximately 51 feet south of the station wagon there was parked a panel truck next to the east curb and in front of the home of Huett's neighbor. No other vehicles were parked on the street in this block. Kathryn Street is 36 feet in width from curb to curb, the sidewalks 5 feet and parkways 12 feet—total 60 feet.

County Road, a street running east and west, is approximately 160 feet south of the most northerly part of the Huett driveway. A 1958 Chevrolet driven by Richard Jerd Good rounded the corner of County Road and Kathryn Street, coming from the east, and proceeded north on Kathryn. Said defendant, driving 15 to 20 miles an hour, saw children playing on both sides of the street. He was looking generally ahead, and attempting to keep children on both sides of the street within his range of vision. He saw no children in the street. Five children ranging in age from 9 to 12, including appellant's older brother, were playing "ball tag" on the west side of Kathryn. Appellant was struck by defendants' automobile as he was crossing the street moving toward these boys. He had come from his front yard or the sidewalk at a gait described by one of the boys as halfway between a walk and a run. He was a small child, about 3 feet high, but dressed in bright colors. His brother Robbie, who was one of the five playing ball tag, saw him in the street and yelled to him "Scott, look out"; he stopped momentarily as he turned to look at the approaching car and was hit immediately by the left front fender. Had he not stopped he might have cleared its path for defendant saw the top of his head about that time and threw on his brakes immediately but was unable to avoid the impact. Defendant had not seen Scott before that instant. He testified: "I was looking in the general area of watching trying to watch all those children at the same time. I wasn't looking specifically for Scott. . . . I believe he almost made it across in front of me." The point of impact was about 164 feet north of the north curb line of County Road and 15 feet west of the east curb on Kathryn Street.

The trial court found that defendant was "not guilty of any negligence or carelessness" and that the accident "was an inevitable or unavoidable accident."

Appellant contends that "the driver should have seen the child when the child started to move from his front yard to cross the street and that the driver could have stopped his car in time to avoid hitting the child"; and that this negligence was the proximate cause of the accident.

In *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183 [258 P.2d 834], it is said: "Whether or not defendant was guilty of negligence . . . is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented." Among the cases upon which appellant

relies is *Cambou* v. *Marty*, 98 Cal.App. 598 [277 P. 365]; in *Law* v. *Shoate*, 178 Cal.App.2d 739 [3 Cal.Rptr. 274], plaintiff-appellant also relied upon that case "to show that respondent must under the facts and circumstances of the instant case be held guilty of negligence as a matter of law." The court said (p. 741): "We find no merit in appellant's contention. Neither the Cambou case nor the Gorzeman case attempts to define rigidly a standard of conduct which must be adhered to under all circumstances lest the actor be considered negligent. Such was the ruling in the case of *Lotta* v. *City of Oakland*, 67 Cal.App.2d 411, 413 [154 P.2d 25], wherein the court said: 'Negligence as a matter of law, and negligence *per se*, are terms of general use, but not easily defined. Where the standard of conduct of a reasonable man is expressly defined by legislative enactment or judicial decision the failure to conform with that standard is called negligence *per se*. But, when the standard of obligatory conduct is not fixed by a legislative enactment, it is that of a reasonable man under the circumstances. (Rest. Torts, § 285.) Where the standard is not fixed by judicial decision covering the same situations or circumstances the jury must determine the issue of negligence on the basis of the standard of reasonable conduct, or the degree of care which a reasonable person under similar circumstances would exercise to protect another from harm. [Citation.]' "[1]

*Kading* v. *Willis*, 135 Cal.App.2d 82, 87-88 [286 P.2d 861]: " 'As the courts have frequently said, it is ordinarily necessary to exercise greater care for the protection and safety of young children than for adult persons possessing normal and mature faculties. Their conduct is unpredictable and one operating a motor vehicle should anticipate their thoughtlessness and impulsiveness. [Citation.] The presence of children is in itself a warning requiring the exercise of care for their safety. [Citation.] Moreover, if the evidence shows that a driver has knowledge of the presence of children he may be held to have been responsible although it appears that he did not see the injured child in time to prevent the injury.' (*Conroy* v. *Perez*, 64 Cal.App.2d 217, 224 [148 P.2d 680].) . . . Ordinarily the question of whether a driver should be alerted to the necessity of looking for the presence of children is one of fact for the jury to solve, as is also the question of whether

---

[1]The other cases cited by appellant do not stand for a contrary rule; each one clearly presented a question of fact to be determined by the jury or court.

that duty, once it arises, has been properly performed."
*Prato* v. *Snyder*, 12 Cal.App.2d 88, 97 [55 P.2d 255] : "Under
the general rule the failure to look at all constitutes negligence
as a matter of law, while the question of whether one who
looks sees all that he should is one of fact for the jury."
(See also, *Jones* v. *Brown*, 176 Cal.App.2d 184, 189 [1 Cal.
Rptr. 267] ; *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 37-38 [286
P.2d 21].) Thus, failure to see is not necessarily neg-
ligence as a matter of law.

 The trier of fact could reasonably conclude that de-
fendant did everything possible to avoid the accident after he
saw appellant, and that he was not negligent in failing to see
him in the street sooner,—that the accident happened so sud-
denly that it was unavoidable. (See *Geren* v. *Lowthian*, 152 Cal.
App.2d 230, 233-234 [313 P.2d 12].) Although a finding to the
contrary would find support in the record, we cannot hold,
as a matter of law, that respondent was negligent.

This is a very close case. The trier of fact would have been
justified in holding that defendant, who concededly was aware
that children played in the street in that area and actually
knew that they were playing at that time upon the sidewalk
on both sides of the street, who had for 50 feet or so an un-
obstructed view of the portion of the sidewalk from which
Scott emerged, should have been sufficiently alert to discover
his presence as soon as he left the sidewalk, and knowing the
propensities of children, as he admittedly did, should have
stopped or slowed his car soon enough to avoid striking the
child. But if we were to adopt or lean toward that view we
would not be justified in reversing the judgment for, as pointed
out in *New* v. *New, supra*, 148 Cal.App.2d 372, 383, "[w]hen
two or more inferences can be reasonably deduced from the
facts, the reviewing court is without power to substitute its
deductions for those of the trial court." See also *Primm* v.
*Primm*, 46 Cal.2d 690, 694 [299 P.2d 231].

This in our judgment is a case wherein the trial judge could
have drawn two conflicting inferences of fact—negligence or
due care—and hence it was for him, not the court of review,
to select the one deemed more reasonable. The trial judge
having done so, we cannot reject his selection or the con-
clusion based thereon. Of course, the question of proximate
cause was likewise a question of fact for the judge. (*Hilyar* v.
*Union Ice Co., supra*, 45 Cal.2d 30, 38; *Valdez* v. *Clark*, 173
Cal.App.2d 476, 478 [343 P.2d 281].)

 Appellant contends that the court erred in denying

his motion made prior to trial to examine certain papers in possession of defendants' attorneys. These consisted of photographs of the scene of accident taken by one Van Alstine, an employee of Allstate Insurance Company, and his report to his company; also statements procured by him from the defendant driver and several other witnesses. An affidavit of Van Alstine avers that he is a casualty adjuster employed by Allstate, defendants' insurance carrier; that such investigation and said statements were made and taken pursuant to a policy of liability insurance issued by Allstate by the terms of which it agreed to pay on behalf of the defendants and persons covered by the terms thereof, all sums which said persons should become legally obligated to pay as damages because of bodily injury or death, sustained by any person and arising out of the ownership, maintenance, or use of the vehicle described in plaintiff's complaint; that said investigation and statements were made for the primary purpose of transmittal to said defendants' attorneys in the course of professional employment for the purpose of information and aid to said attorneys in defending any litigation arising out of said accident; that said statements, and each of them, were in fact transmitted to King and Mussell, defendants' attorneys, pursuant thereto. The motion sought inspection of the Van Alstine report and statements taken from witnesses Richard Jerd Good, Joseph Veneglass, Joe Lawrence, Michael Osborne, Lewis Ray Keller and James Lawrence. Of these persons Osborne, Keller and James Lawrence were called as witnesses for plaintiff. There is no showing of surprise, hostility or even disappointment with the testimony of these plaintiff's witnesses, nor is there any suggestion of any manner in which their testimony could have been improved had plaintiff's attorney been in possession of their statements given to Van Alstine. Mr. Veneglass was the Huett's neighbor to the south, but there is no showing whatever as to whether he did or did not have any knowledge of the accident or the surrounding circumstances. There is like absence of showing concerning Joe Lawrence. That plaintiff's counsel had access to defendant's statement to the police appears from the fact that Officer Bisgard was called as plaintiff's witness and testified to the contents of the statement. Plaintiff's counsel does not make any effort to show any real prejudice from the ruling but he stands upon the bare legal right to an inspection. As in *Heffron* v. *Los Angeles Transit Lines,* 170 Cal.App.2d 709,

716 [339 P.2d 567, 74 A.L.R.2d 526], there was no substantial ground for reversal. We cannot say that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]) and therefore we cannot declare a miscarriage of justice.

There is no merit to appellant's contention that the trial court erred in "treating unavoidable accident as an affirmative defense." This was a nonjury trial, and the following statement from *Land* v. *Gregory,* 168 Cal.App.2d 15, 19 [335 P.2d 141], is pertinent: "The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury. (*Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 658-659 [320 P.2d 500].) We are not here dealing with the question of the effect of instructions to a jury on 'unavoidable accident' and, the finding of the trial court that the collision was directly and proximately the result of an unavoidable accident insofar as the defendant Archie G. Gregory was concerned is not inconsistent with the finding that at all times mentioned in the complaint said defendant was driving and operating his pickup truck with due care and caution."

Lastly, appellant contends the trial court erred in not making a finding of fact on the issue of agency. There is a finding that defendant driver was operating said automobile with the permission and consent of the owners, defendants Harold W. Good and Roberta J. Good, who were the father and sister of said driver, respectively. That is enough to support a judgment within the statutory limit of liability of owners. Moreover, in view of the finding upon negligence, agency became wholly immaterial. (See *Aguirre* v. *Fish & Game Com.,* 151 Cal.App.2d 469, 473 [311 P.2d 903]; *Bohn* v. *Watson,* 130 Cal.App.2d 24, 41 [278 P.2d 454].)

Judgment affirmed.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

On August 14, 1961, a rehearing was denied and the opinion was modified to read as above. The following opinion was then rendered:

THE COURT.—Our opinion herein was filed on July 24, 1961. The Supreme Court's ruling in *Greyhound Corp.* v.

---

*Assigned by Chairman of Judicial Council.

*Superior Court*, 56 Cal.2d 355, 395 [15 Cal.Rptr. 90, 364 P.2d 266], was filed on August 3, 1961. Apprised of the contents of that decision, we have reexamined the record and have concluded that application of the *Greyhound* rules to the case at bar spells error on the part of the trial court in denying the motion for inspection, but we cannot hold that it was prejudicial.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1961.