[L. A. No. 1218.   Department Two.—March 8, 1904.]

In the Matter of the Guardianship of ROY EDWARD SALTER, a Minor.   CHARLES E. SALTER, Appellant, v. MARY JOHNSON, Respondent.

GUARDIAN AND WARD—APPOINTMENT OF GUARDIAN—SPECIAL PROCEEDING —RIGHT OF FATHER TO LETTERS.—The court in appointing a guardian of a minor does not act in the exercise of its general equity powers, but acts in a special proceeding, and by virtue of the statutory power conferred upon it to appoint guardians in certain designated cases, under sections 1747 to 1751 of the Code of Civil Procedure; and where it appears that the father of a minor under fourteen years is competent to act as his guardian he is entitled to letters of guardianship to the exclusion of the grandmother of the child.

ID.—HEALTH OF CHILD.—The right of the father, being competent, to have the custody and control of a child under fourteen years of age is not affected by a finding as to the health of the child, and the better opportunity he would have for fresh air and exercise at the home of his grandmother than at the residence of his father in a city.

APPEAL from an order of the Superior Court of Los Angeles County appointing a guardian of a minor child.   Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Haas & Garrett, for Appellant.

J. H. Merriam, for Respondent.

LORIGAN, J.—Mary Johnson, maternal grandmother of the above minor, a child five years of age, applied to the superior court of Los Angeles for appointment as his guardian, alleging in her petition that his father had abandoned him, and that he was not a fit and proper person to have the care and custody of the child.

Charles E. Salter, the father of the minor, opposed the application of the grandmother, and himself petitioned for appointment as guardian.

The matter coming on for hearing, the court found that the father had not abandoned his child; that he was a fit and proper person to have his care and custody; and that his wife

(the mother of the child was dead, and the father had re-married) was also a fit and proper person to have such cus-tody. The court further found that the child was in delicate health, and required the constant watching of a competent and experienced person; that his health and welfare would be better promoted by being placed for the greater part of the time in the custody of his grandmother; that the grandmother had a home in Pasadena where the child could be kept and get the benefit of fresh air and exercise, whereas, if left in the custody of his father, he would have no opportunity of being outdoors, except upon the public streets of the city of Los Angeles.

The court thereupon appointed the grandmother guardian, incorporating in the decree a condition that the father each week be permitted to have charge of the child from Saturday morning till the Monday morning ensuing.

This appeal is taken by the father from the order appoint-ing the grandmother such guardian, and, in our opinion, must be sustained.

Counsel for respondent discourses learnedly in support of the order upon the power of courts of equity in England and in this country in matters of guardianship, but we cannot see that this discussion has any application to the matter under consideration. The court in this matter was not acting in the exercise of its general equity powers or as an equitable tri-bunal when it made the order under review. It was acting strictly in a special proceeding and by virtue of power con-ferred upon it to appoint guardians in certain designated cases. (Code Civ. Proc., secs. 1747-1751.) And the validity of the order which it made in this case must be determined solely from a consideration of those sections, and particularly of section 1751.

Having directed attention to the provisions of the code which govern in matters of this character, further discussion is practically obviated by an examination of the case of *In re Campbell,* 130 Cal. 381-383, where these provisions are dis-cussed. In that case, which was also a contest between ma-ternal grandparents and a father for the guardianship of his infant son, the lower court found that it was for the best interests—the temporal mental and moral welfare—of the minor that it be awarded to its grandfather. On appeal from

such order this court, after pointing out that in an application
for appointment of a guardian in a special proceeding such as
the one at bar a court has no unlimited discretion to appoint
a guardian for a minor other than the father, even if in its
opinion the interest of the minor would be thereby subserved,
proceeds to discuss the provisions of the code under which
the applications in both that case and this were heard and
disposed of. After referring to said section 1751, which pro-
vides that: "The father . . . of a minor child under the age
of fourteen years, if found by the court competent to dis-
charge the duties of guardianship, is entitled to be appointed
a guardian of such minor child, in preference to any other
person," the court says, in reversing the order: "Accordingly,
by the provisions of section 1751 of the Code of Civil Pro-
cedure, it is made the duty of the court to appoint the father
or mother guardian, 'if found by the court competent to dis-
charge the duties of guardianship.' But under this provision,
and under the general law, the *prima facie* presumption is,
that the parent is competent; and hence the court is not au-
thorized to appoint another as guardian, unless it finds to
the contrary. Hence the section is to be construed as if it
read that the father or mother is to be appointed 'if not
found by the court incompetent,' etc. The fact of compe-
tency or incompetency of the father was therefore the con-
trolling question in this case; and as there is no finding on the
point, the findings must be regarded as insufficient to support
the order appealed from."

So in the case at bar the controlling question was the com-
petency or incompetency of the father, and as the lower court
expressly found that he was competent, that was the end of
the matter, as far as the power of the court to appoint the
grandmother as guardian was concerned, because the court
was without authority, under the terms of section 1751, after
finding the father competent, to appoint any other person
than the father as guardian of his child.

Nor is the right of the father, he being competent, to have
the custody and control of his child at all affected by the
finding of the court relative to the health of the child, and the
better opportunity he would have for fresh air and exercise
at the home of his grandmother than at the residence of his
father.

There is nothing in this finding from which it appears that the father is unable to provide for the comfort or minister to the wants of his child. His natural love for it would inspire him to extreme solicitude for its health and comfort. If the circumscribed limits of his present residence, or its peculiar situation in the city of Los Angeles, prevents the child from having that amount of pure air and exercise which its health demands, the father may move to some more favored locality, or he has the power to place the child elsewhere with another family, where it will have the beneficial advantages it requires, or he may permit it to remain with its grandmother.

But even if the father were poor and unable to provide for the child as comfortably as his grandmother could, or would be compelled to maintain him at his place of abode in Los Angeles under the circumstances found by the lower court, these considerations would furnish no legal ground for depriving him of the custody of the child. They apply merely to its material temporal welfare, and if such considerations were controlling they could in every instance where poverty was the misfortune of a parent be invoked to deprive him of his child in favor of one more fortunately situated and better able to minister to its material comfort. Common humanity would be shocked at the serious maintenance of such a proposition.

From the recitals of the order in this case, we think it is fairly inferable that the court intended that the appointment of the grandmother should be temporary merely, having in view solely the then health of the child and the advantages toward physical improvement which further residence at its grandmother's home would give it; that as the court found the father competent, it would, upon an improved condition of the child's health being shown, and on application of the father, have made such further order as would have placed the child in his custody.

Appellant, however, was not required to take any chances in this regard, and having appealed from the order for the reasons given above, the said order appointing the respondent is reversed and the proceeding remanded.

McFarland J., and Henshaw, J., concurred.