[S. F. No. 18511.   In Bank.   Oct. 27, 1953.]

Guardianship of RICHARD STEVEN KENTERA, a Minor. RICHARD STEVEN KENTERA, Appellant, v. VIRGINIA LEE BOESEL, Respondent.

Marshall E. Leahy and John F. O'Dea for Appellant.

W. L. A. Calder and Lorne M. Stanley for Respondent.

John E. Anderton, as Amicus Curiae on behalf of Respondent.

SPENCE, J.—This is an appeal from an order denying the petition of Richard Steven Kentera for the appointment of his grandmother as guardian of his person. Appellant contends that as a minor, 14 years of age, he has an absolute right to have his nominee appointed as guardian of his person, provided that his nominee is found to be a suitable person. Respondent, who is the mother of appellant, contends that there must first be a showing of necessity or convenience for the appointment of a guardian. If no such showing is made, respondent asserts that the petition of the minor should be denied without regard to the fitness of the nominee. The statutory scheme sustains respondent's position.

Appellant's mother and father were divorced in 1939 and both remarried. By the terms of the divorce decree appellant's custody was vested in both parents, with physical custody in the mother. Since 1939 he has been living with his mother and following her remarriage, with her and his stepfather. There are three other boys in the family: the oldest was 17 and is the stepfather's child by the former marriage; the two younger boys, 9 and 7, are the children of the present marriage. In 1951, appellant, then aged 14, filed a petition for guardianship in which he nominated his paternal grandmother, Angelina Kentera, to be guardian of his person. He was at the time visiting her in San Francisco during his summer vacation from school. Appellant's mother filed an opposition to his petition. After setting forth the facts entitling her to appellant's custody, she denied that he was in need of a guardian and she denied that the grandmother was a suitable person to serve as such. Appellant's mother alleged that the grandmother was about 60 years of age; that she lived with her husband, who is not related to appellant; that no young people resided in their home; that they operated a restaurant in San Francisco which consumed most of their time and attention; and that because of age and outside interests, the grandmother would not be able to supervise appellant properly and give him a proper home environment. Appellant's mother also alleged that in her own home, the four boys lived and played together, and that it would be in the best interests of appellant to remain with his mother.

After the hearing, the court entered an order denying appellant's petition and ordering him to return to his mother in Ukiah. The court found that since the divorce of his

parents, appellant has been in the general physical custody of his mother; that he has lived in his mother's home practically his entire lifetime; that she was a fit and proper person to have his care, custody, and control, and that her home in Ukiah was a suitable place for him to live. The court also found that the grandmother was a fit and proper person to act as personal guardian but that the appointment of such guardian was not "necessary or convenient."

Appellant challenges the order denying his petition. This denial was based on the last mentioned finding. ■ Guardianship matters are special proceedings, and the validity of orders must be determined from a consideration of the governing statutes. (*Guardianship of Salter,* 142 Cal. 412, 413 [76 P. 51]; *In re Britt,* 176 Cal. 177, 181 [167 P. 863].)

The following sections of the Probate Code are controlling. Section 1405 provides that the "superior court shall appoint a general guardian of the . . . person or estate of minors . . . *whenever necessary or convenient.* . . ." (Emphasis added.) Section 1406 states that the court, in making such appointment, is "to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare," and that where the child is a resident of this state and over 14 years of age, "*he may nominate his own guardian . . . and such nominee must be appointed if approved by the court.*" (Emphasis added.) Section 1440 provides: "When it appears *necessary or convenient,* the superior court of the county in which a minor resides or is temporarily domiciled . . . may appoint a guardian for his . . . person or estate. The appointment may be made . . . on the petition of the minor, if fourteen years of age." (Emphasis added.)

■ These statutes, construed as a whole, require the trial court to proceed in the following manner: first, to determine whether sufficient cause (necessity or convenience) exists to warrant the appointment of a guardian; and second, *if* sufficient cause is found to exist, then to determine whether the nominee merits approval. If the court initially finds that the appointment of a guardian is not "necessary or convenient," then it should deny the petition whether it be made by a "relative or other person on behalf of the minor or [by] the minor, if fourteen years of age." (Prob. Code, § 1440.)

■ While the statutes give the 14-year-old minor the privilege of directly petitioning for the appointment of a guardian, such procedure does not eliminate the need for

making the required showing of necessity or convenience as the basic ground for the appointment. It is only *after* such showing has been made to the satisfaction of the court that the law distinguishes between the 14-year-old and the younger minor, granting to the former the right to have his nominee appointed if approved by the court as a suitable person. Otherwise, in the case of the 14-year-old, the words "necessary or convenient" would be given no meaning, with the result that every minor attaining that age would have the absolute right to select any fit person as his personal guardian regardless of the fitness of his natural parents. ■ The statutory provisions were not intended to upset the normal relationship of parent and child or to disrupt normal family discipline by allowing the 14-year-old minor to withdraw from the family circle at his whim. In other words, sections 1405 and 1440 apply in every case of the appointment of a guardian of a minor in that there must be the initial showing of necessity or convenience; and it is only thereafter that the right of the 14-year-old minor to have his nominee appointed his personal guardian, if fit, may be said to be "absolute." (Prob. Code, § 1406.)

Appellant relies on two groups of cases. The first group concerns the question of the appointment of a guardian for a minor's estate. ■ Where a minor owns property, that fact is ordinarily sufficient to support a finding that the appointment of a guardian of the minor's estate is "necessary or convenient," and the preference of the minor, if 14 years old, prevails over the objection of any person, including the parent, provided that the nominee is found to be suitable. (*Guardianship of Kirkman,* 168 Cal. 688, 690 [144 P. 745]; *Estate of Meiklejohn,* 171 Cal. 247, 248 [152 P. 734]; *Estate of McSwain,* 176 Cal. 287, 288 [168 P. 117].) While in two of these cases the matter of the appointment of a guardian of a minor's person was noticed, the court in neither instance passed upon the question. In the Kirkman case, appellant waived any objection as to the disposition of the personal guardianship claim (168 Cal. 690-691); and in the McSwain case the issue of whether it was either "necessary or convenient" that a personal guardian should be appointed had become moot by the time the appeal was taken and was not decided (176 Cal. 288).

The cases in the second group cited by appellant concern solely the appointment of a personal guardian for a minor. In two of these cases the principal question involved was

the jurisdiction of the court to appoint a personal guardian, and it does not appear that the question of whether there must be proof of necessity or convenience was presented. (*Collins* v. *Superior Court*, 52 Cal.App. 579 [199 P. 352]; *Guardianship of Kerr*, 29 Cal.App.2d 439 [85 P.2d 145].) In *Guardianship of Burket*, 58 Cal.App.2d 726, the court observed at page 728 [137 P.2d 475] that ''. . . there appears to be some doubt as to the necessity for such proof . . .'' but it nevertheless held that the evidence in that case was sufficient to establish such necessity or convenience. In *Guardianship of Gianoli*, 60 Cal.App.2d 504 [140 P.2d 987], the court cited the Burket case with approval and held that the evidence there was likewise sufficient to establish ''the necessity or convenience for the appointment.'' (P. 507.) If it may be said that any of these cases implies either that a minor of the age of 14 years has the absolute right to the appointment of his nominee as his guardian in the absence of a showing of necessity or convenience, or that a mere showing that a minor has reached the age of 14 years and has nominated a guardian compels a finding of necessity or convenience, such implication is out of harmony with the statutory scheme governing the appointment of a personal guardian and is hereby disapproved.

As above stated, the court here found that the appointment of a guardian for appellant was not ''necessary or convenient.'' This was a matter for the determination of the trial court. As was said in *Guardianship of Hann*, 100 Cal.App. 743, at page 746 [281 P. 74], where the court denied the petition of a 16-year-old minor: ''It is provided in the Code of Civil Procedure, section 1747 (now Prob. Code, § 1405), that the court may appoint a guardian for a minor 'when it appears necessary or convenient.' The court was not bound to appoint a guardian simply because the minor nominated one. (*Newton* v. *Janvrin*, 62 N.H. 440.) The court, not the minor, is required to decide whether a guardianship is necessary or convenient.''

A review of the evidence bearing on the issue of necessity or convenience shows that there is no merit in appellant's attack upon the trial court's finding. Both appellant's mother and his stepfather testified at length as to the suitableness of the home that they provided for appellant, the schooling and recreational facilities that he had, and the companionship that he enjoyed with the three other boys in the family. Their neighbors corroborated this testimony. Appellant acknowledged his strong affection for his mother,

and his appreciation of her loving care, but he stated his dislike of his stepfather because of the latter's alleged discriminatory treatment in settling disputes among the boys. The stepfather and mother both denied that such discrimination had ever been made, and both stated that all four boys were treated alike in an effort fairly to maintain the necessary family discipline. ▮ The appellate court's function begins and ends with a determination as to whether or not there is any substantial evidence which will support the findings of the trier of fact. (*Moran* v. *Bromley*, 112 Cal.App.2d 520, 521-522 [246 P.2d 1001]; *Wells Fargo Bank & Union Tr. Co.* v. *Brady*, 116 Cal.App.2d 381, 397, 439 [254 P.2d 71].) ▮ The foregoing brief summary shows that there was ample evidence to support the finding that it was not "necessary or convenient" that a guardian of appellant's person be appointed.

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent.

In guardianship as well as in divorce proceedings the law, as enacted by the Legislature, requires that the courts give controlling effect to the best interests of the minor child. (Prob. Code, § 1405; Civ. Code, § 138.) The paramount issue in this case, if the law were followed, would be simply: Would the guardianship for which Richard petitions best serve his temporal and mental and moral welfare? (See Prob. Code, § 1406.)

If upon the evidence the best interests of the child would best be served by the appointment of a guardian of his person then it would follow as a matter of law that it was "necessary or convenient," within the meaning of section 1440 of the Probate Code, that a guardian be appointed. But by this decision the majority of this court advance another harsh step in their consistent and regrettable refusal to give effect to modern and enlightened legislation for child welfare. (See *Stewart* v. *Stewart* (1953), *ante*, pp. 447, 453-454 [260 P.2d 44]; *Guardianship of Smith* (1953) (Cal.) (rehearing granted) [255 P.2d 761, 767-771]; and *Roche* v. *Roche* (1944), 25 Cal.2d 141, 144-149 [152 P.2d 999].)

Again this court places reliance upon and follows the dark view that as against parents a child is a mere chattel. It

cites *Guardianship of Salter* (1904), 142 Cal. 412 [76 P. 51], which in turn cites as its sole authority *In re Campbell* (1900), 130 Cal. 380 [62 P. 613]. The Campbell case, as pointed out in my dissent in *Roche* v. *Roche* (1944), *supra*, 25 Cal.2d 141, 145, declares the governing theory that the parent's right to custody (and earnings) of a child is (p. 382 of 130 Cal.) ''like the right of the child in the father—a right vested in him for his own benefit, and of which it would be a personal injury to deprive him. The right must therefore be regarded as coming within the reason, if not within the strict letter, of the constitutional provisions for the protection of property. . . .'' In truth, this court now aggrandizes the theory of the Campbell case: It holds that the petitioner child here is not even entitled to a hearing upon the question as to whether his temporal and mental and moral welfare will best be served by granting his petition but hastens to preserve the importance of property considerations by adding the statement that ''Where a minor owns property, that fact is ordinarily sufficient to support a finding that the appointment of a guardian of the minor's estate is 'necessary or convenient,' and the preference of the minor, if fourteen years old, prevails over the objection of any person, including the parent, provided that the nominee is found to be suitable.'' The view I seek to emphasize is that the Legislature by its enactments has shown at least equal concern for the ''temporal and mental and moral welfare'' of the child as for his property rights, yet this court while punctilious in upholding the latter, strikes down the former.

The Salter case, relied on here, says of *In re Campbell, supra* (pp. 413-414 of 142 Cal.) : ''In that case, which was also a contest between maternal grandparents and a father for the guardianship of his infant son [incidentally, *under* the age of 14 years], the lower court found that it was for the best interests—the temporal mental and moral welfare—of the minor that it be awarded to its grandfather. On appeal from such order this court, after pointing out that in an application for appointment of a guardian in a special proceeding such as the one at bar a court has no unlimited discretion to appoint a guardian for a minor other than the father, even if in its opinion the interest of the minor would be thereby subserved, proceeds to discuss the provisions of the code under which the applications in both that case and this were heard and disposed of. After referring to said [former] section 1751 [of the Code of Civil Procedure], . . . the court says, in reversing the order [quoting from p. 383 of 130 Cal.] :

'. . . the section is to be construed as if it read that the father or mother is to be appointed "if not found by the court incompetent," etc. The fact of competency or incompetency of the father was therefore the controlling question in this case; and as there is no finding on the point, the findings must be regarded as insufficient to support the order appealed from.'

"So in the case at bar the controlling question was the competency or incompetency of the father, and as the lower court expressly found that he was competent, that was the end of the matter, as far as the power of the court to appoint the grandmother as guardian was concerned, because the court was without authority, under the terms of section 1751, after finding the father competent, to appoint any other person than the father as guardian of his child.

"Nor is the right of the father, he being competent, to have the custody and control of his child at all affected by the finding of the court relative to the health of the child, and the better opportunity he would have for fresh air and exercise at the home of his grandmother than at the residence of his father."

By the instant decision the court even denies to the minor the right to have the issue as to his best interests determined. In the Campbell and Salter and Roche and Smith and Stewart cases the court wrote into the statutes words which the Legislature had not inserted; here the court in effect strikes the words "or convenient" out of the statutory provision that "The superior court *shall* appoint a general guardian of the . . . person or estate, of minors . . . whenever necessary *or convenient* . . ." (Prob. Code, § 1405; italics added.) It appears that the trial court did not think the word "convenient" had any significance in relation to the right of the petitioner. The record shows the court's statement in this regard: "Now, on the face of the record I cannot say that I find it necessary. It might always be convenient, but I cannot say that it is necessary by reason of anything that is occurring or has occurred where he [petitioner] now exists[1] insofar as the home of his mother is concerned."

The barest outline of the facts in this case—the placing of this boy in the home of his mother and stepfather with three other children, one of such children being older than petitioner and the child of his stepfather and the two others being younger and the children of his mother and stepfather,

---

[1] Perusal of the entire record indicates that the use of the word "exists," rather than "lives," is probably accurate diction.

coupled with the boy's love for his own father and his father's mother—show a case which as a matter of law entitled him to have his petition determined on its merits. It could only be determined on its merits by finding whether his interests would best be served by the appointment of the guardian whom he sought. If the finding in this respect were favorable, and his nominee was a fit and proper person (as was found), then he was entitled to an order granting his petition. The mere conclusional finding (that because the boy had a place in the home of his mother and stepfather it was not "necessary or convenient" to appoint a guardian for him) upon which the trial court and the majority here dispose of this case, begs the real issue. In fact, disposition of this case on that ground denies to Richard his day in court on the real issue.

For further and adequate discussion of this case reference is made to, and I adopt, the decision prepared for the District Court of Appeal by Justice Goodell and concurred in by Presiding Justice Nourse, reported at 254 P.2d 960.

The judgment should be reversed and the case tried on its merits.