[No. G042509. Fourth Dist., Div. Three. Jan. 8, 2010.]

NADYA SULEMAN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
PAUL PETERSEN, Real Party in Interest.

1290

## Counsel

Law Offices of Arthur J. LaCilento, Arthur J. LaCilento; Jeffery J. Czech & Associates and Jeffery J. Czech for Petitioner.

No appearance for Respondent.

Deily Law Firm, John P. Deily, Cynthia V. Roehl, Michele Carmeli; Allred, Maroko & Goldberg, Gloria Allred and John S. West for Real Party in Interest.

Reich, Adell & Cvitan, Laurence S. Zakson and J. David Sackman for American Federation of Television and Radio Artists, AFL-CIO, as Amicus Curiae on behalf of Real Party in Interest.

**OPINION**

**FYBEL, J.—**

INTRODUCTION

In January 2009, Nadya Suleman gave birth to octuplets. Paul Petersen filed a petition seeking appointment of a guardian of the octuplets' estates, who would replace Suleman as the person making financial decisions for the children. Probate Code section 1510, subdivision (a) permits a petition for appointment of a guardian to be filed by "[a] relative or other person on behalf of the minor." (All further statutory references are to the Probate Code, unless otherwise specified.) This writ proceeding was brought by Suleman to challenge the probate court's denial of her motion to dismiss Petersen's petition and the court's appointment of the Orange County Social Services Agency (SSA) to conduct an investigation of the family's finances.

█ The probate court erred by denying Suleman's motion to dismiss the petition. The petition should have been dismissed because Petersen has neither pleaded ultimate facts demonstrating Suleman has engaged in any financial misconduct, nor alleged any other information warranting court intervention in the Suleman family's finances. For these reasons, Petersen has no standing under section 1510, subdivision (a) and, even if he did, his petition is insufficient to survive a motion to dismiss.

This is an unprecedented, meritless effort by a stranger to a family to seek appointment of a guardian of the estates of the minor children. The petition's allegations are insufficient to infringe on a parent's civil rights or to rebut the presumption under California law that a parent is competent to manage the finances of his or her children. There is nothing in the petition that shows that the best interests of the children in the management of their finances are not being served by Suleman.

We therefore grant Suleman's petition for writ relief and direct the probate court to grant Suleman's motion to dismiss Petersen's petition. For the reasons we explain *post*, we also vacate the probate court's order for an investigation of the family's finances.

STATEMENT OF ALLEGATIONS AND PROCEDURAL HISTORY

On January 26, 2009, Suleman gave birth to eight children.

In May 2009, Petersen filed a petition seeking the appointment of a guardian for the estates of those children. Petersen is the president of A Minor

Consideration, a nonprofit corporation he describes as having been "formed to give guidance and support to young performers, past, present and future. An important part of our mission is that we are dedicated to helping to preserve the money these children generate, so that they receive the appropriate share of their earnings and are not deprived of their legal share by their parents or others who may have a conflict with them and/or may not be careful to protect the children's financial interests."

Petersen filed an amended petition in June 2009. In the amended petition, Petersen stated the appointment of a guardian was necessary or convenient because "I am informed and believe that the 8 minor children, all of whom have been the subject of intense public interest since their birth on January 26, 2009, are in need of a guardian of the estate in order to protect their potential business opportunities, i.e. possible lucrative endorsement[s] that may arise as a result of their unique status. The appointment of a guardian of the estate[s] will provide assurance that the children are not exploited. Further, the guardian of the estate will be able to insure that each child is independently represented by an agent in connection with negotiating contracts for the[ir] services. [¶] I am informed and believe that their mother, Nadya Suleman, has already entered into contracts with RadarOnline.com to take and to sell video and with Poleris Photos to sell still photographs of the children. It is critically important that the prospective earnings of the children are adequately protected in accordance with California law. *It is unknown whether the children['s] mother has taken the appropriate steps to insure that the earnings of the minor children are placed into blocked accounts so that they may have access to said funds upon their reaching majority.* [¶] I have recently discovered articles on the internet announcing that the mother, Nadya Suleman, has entered into an arrangement with a production company, Eyeworks, for a documentary series filming the children's lives." (Italics added.) Attached to the amended petition were printouts from three Web sites reporting the agreement with Eyeworks.

Attached to the original petition were printouts containing photos and video links from the Web site RadarOnline.com, dated between February 9 and April 20, 2009. The petition identified these as "[p]hotographs of [the] minor children."

In the original petition, Petersen proposed Linda Rogers, a licensed private fiduciary, to be the guardian of the estates of the children. In the amended petition, Petersen proposed Terry W. Hammond, an attorney licensed as a national certified guardian and the executive director of the National Guardianship Association, as the guardian of the children's estates. Petersen never proposed

himself as guardian for the children's estates. (The identity and qualifications of a guardian are not issues before us in this proceeding.)

Suleman filed a motion to dismiss the amended petition, arguing Petersen lacked standing, and asserting that the petition failed to allege sufficient facts.[1] Suleman also filed an objection and opposition to the amended petition. Petersen submitted copies of the following additional documents with his opposition to the motion to dismiss: (1) an e-mail from an executive of Eyeworks USA, advising Petersen's counsel that it has "come to my attention through an acquaintance that a production company, Pilgrim Films and Television, has licensed all of the Radar Online footage of Nadya Suleman for use in a television program," and accusing Pilgrim Films and Television (apparently a competitor of Eyeworks) of potentially exploiting the octuplets; and (2) a check from American Media Operations, Inc., for $25,000, payable to Suleman's mother. (The relevance of the latter document is a matter of complete speculation and its purported significance has never been explained.) Petersen's opposition referred to an investigation by the California Division of Labor Standards Enforcement; no evidence of such an investigation appears anywhere in the record.

Suleman filed evidentiary objections to Petersen's opposition to the motion to dismiss and the documents offered by Petersen. At the hearing on Suleman's motion to dismiss, the probate court failed to rule on those objections. After the hearing, the court took the motion to dismiss under submission.

On August 21, 2009, the probate court issued an order reading, in relevant part, as follows: "Motion to Dismiss First Amended Petition is DENIED.

---

[1] Although Suleman did not specifically identify the lack of sufficient facts as a separate ground for the motion to dismiss, the motion contains, inter alia, the following contentions: "The First Amended Petition, on its face, is woefully deficient regarding any facts which allege the guardianship is necessary and in the best interests of the minors pursuant to *California Probate Code* Section 1514. [¶] The First Amended Petition fails to state any facts that the mother has allegedly, wrongfully caused any harm to necessitate an independent Guardian for the Estates of these minors. [¶] The First Amended Petition, on its face, demonstrates the pleadings are legally deficient and this court must grant Mother's Motion to Dismiss this case. [¶] . . . [¶] The First Amended Petition does not state the date, time, or place, of any alleged misconduct by the mother. The First Amended Petition does not allege misappropriation or mismanagement of any alleged assets of these minor[s] which necessitates an independent Guardian be appointed by this court. The Petition is based upon speculation and conjecture that there is a necessity for a Legal Guardian for the Estate[s] of these minors." As explained in detail, *post*, the issues of standing and insufficiency of the ultimate facts alleged in the petition are inextricably intertwined, and Petersen was on notice Suleman contended that his petition contained insufficient facts.

Probate Court Section 1510[, subdivision ](a) permits 'a relative or *other person* on behalf of [the] minor' to file a Petition for Appointment of Guardian. There is no statutory requirement such a petitioner must be an 'interested person' or enjoy any type of relationship with the minor or minors named in the petition. As the paramount concern in guardianships is the best interests of children, the legislature has not restricted the class of individuals who may petition seeking to protect those interests. In issuing this ruling the Court does not evaluate the underlying merits of the petition. Any determination will occur as part of the orderly procedural process accorded all guardianship petitions. [¶] As provided by Probate Code Section 1513[, subdivision ](a) the Court now invites [SSA] to conduct an investigation and file with the court a report and recommendation concerning the proposed guardianship of the estates of the named minors." (Original italics.)

On August 25, Suleman filed a petition for writ of mandate/prohibition, asking this court to issue a peremptory writ of mandate directing the probate court to vacate its August 21, 2009 order and to dismiss the amended petition. This court temporarily stayed the portion of the August 21 order regarding the section 1513 report, and later issued an order to show cause why the requested writ should not issue. In the order to show cause, we directed the parties to respond to 14 specific questions. After full briefing by the parties, we heard oral argument on December 9, 2009.

DISCUSSION

I.

*SUMMARY OF ISSUES AND HOLDINGS UNDER SECTION 1510, SUBDIVISION (a)*

■ Section 1510, subdivision (a) permits "[a] relative or other person on behalf of the minor" to petition the court for appointment of a guardian of the minor's estate. We consider in this opinion (1) whether Petersen is an "other person on behalf of the minor[s]," and (2) whether Petersen's amended petition pleaded sufficient ultimate facts regarding financial misconduct by Suleman or other information warranting court intervention in the Suleman family's finances. As to both of those questions, the answer is no. We conclude Petersen does not have standing under section 1510, subdivision (a) and, even if he did, the allegations of his petition are insufficient.

## II.

### STANDING AND SUFFICIENCY OF THE PETITION—WHAT TEST APPLIES?

What showing of standing under section 1510, subdivision (a) is necessary before a court may interfere with a parent's financial decisionmaking regarding his or her children? Even if a person has standing under section 1510, subdivision (a)—whether he or she is a relative or other person on behalf of the minor—what allegations need to be pleaded in a petition to survive a motion to dismiss? We conclude the answers to both questions depend on the same test—whether the petition states ultimate facts showing financial mismanagement or other allegations warranting court intervention in the family's finances.

█ We analyze the law of guardianships, the state's concern for the best interests of the children, a parent's civil rights and liberty interest in the care and custody of his or her children, and the presumption that a parent is competent to care for his or her children. Based on this analysis, we conclude a nonrelative must establish standing under section 1510, subdivision (a) by showing ultimate facts warranting court intervention. These same concerns, rights, and responsibilities support a pleading requirement that a petition allege the same type of ultimate facts to support court intervention into the management of a family's finances.

### A. California Law Relevant to Guardianship

█ The Welfare and Institutions Code creates a statutory scheme that grants broad powers for the exercise of a court's jurisdiction to intervene in familial relationships, in order to protect the safety and well-being of children. This case does not arise under the Welfare and Institutions Code, however. As our Supreme Court has recently explained: "After the passage of the juvenile dependency statutes, probate guardianships have continued to provide an alternative placement for children who cannot safely remain with their parents. [Citation.] The differences between probate guardianships and dependency proceedings are significant. [Citation.] Probate guardianships are not initiated by the state, but by private parties, typically family members. They do not entail proof of specific statutory grounds demonstrating substantial risk of harm to the child, as is required in dependency proceedings. [Citations.] Unlike dependency cases, they are not regularly supervised by the court and a social services agency. No governmental entity is a party to the proceedings. It is the family members and the guardians who determine, with court approval, whether a guardianship is established, and thereafter whether parent and child will be reunited, or the guardianship continued, or an

adoption sought under section 1516.5." (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1122 [90 Cal.Rptr.3d 701, 202 P.3d 1089].)

■ The Probate Code contains a statutory scheme by which guardians may be appointed to oversee the persons or estates of minors. Under these statutes, certain persons may ask the court to appoint a guardian. In deciding whether a guardian of the estate should be appointed, the "court is to be guided by what appears to be in the best interest of the proposed ward, taking into account the proposed guardian's ability to manage and to preserve the estate as well as the proposed guardian's concern for and interest in the welfare of the proposed ward." (§ 1514, subd. (e)(1).) For almost 100 years, the California Supreme Court has made it perfectly clear that "the primary consideration for the guidance of the court [in appointing a guardian] is 'the best interest of the child with respect to its temporal and its mental and moral welfare' [citation] . . . ." (*Matter of Allen* (1912) 162 Cal. 625, 629 [124 P. 237] [interpreting Civ. Code, former § 246].) The best interests of the children remain of paramount importance to the court when only a guardian of the estate, not a guardian of the person, is sought. (*Estate of Rosin* (1964) 226 Cal.App.2d 166, 172–173 [37 Cal.Rptr. 830].)

■ In considering an application for appointment of a guardian, however, a court must also consider the right of a parent to the care and custody of his or her children. (*In re Campbell* (1900) 130 Cal. 380, 381–382 [62 P. 613].) California law presumes a parent is competent to care for his or her own children. For almost a century, our state's law has provided: "In accordance with the general presumption in favor of competency, a parent is presumed to be competent to discharge the duties of guardianship in the absence of an affirmative showing to the contrary. [Citations.] . . . [¶] . . . [¶] . . . [I]t is the settled rule of law in this state that the care, custody, and control of a minor child under the age of fourteen years must be committed to its parents, rather than to strangers, unless it be shown and found that the parent is unfit to perform the duties imposed by the relation or has, by abandonment of the child, forfeited the natural right to its custody. In short, in a contest for guardianship, as here, between a parent of a child and a stranger to the child, the paramount question is the competency of the parent to act as guardian, and, in the absence of a justifiable finding of the parent's incompetency, the court must appoint the parent as guardian despite the fact that the material welfare of the child may perchance be enhanced by committing its care and custody to another person. [Citations.]" (*Estate of Akers* (1920) 184 Cal. 514, 519–522 [194 P. 706].)

■ The right to raise one's own children as one sees fit is a matter of federal due process. "It is cardinal with us that the custody, care and nurture

of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. [Citation.] And it is in recognition of this that these decisions have respected *the private realm of family life which the state cannot enter.*" (*Prince v. Massachusetts* (1944) 321 U.S. 158, 166 [88 L.Ed. 645, 64 S.Ct. 438], italics added.)

■ "The concept of personal liberties and fundamental human rights entitled to protection against overbroad intrusion or regulation by government is not limited to those expressly mentioned in either the Bill of Rights or elsewhere in the Constitution, but instead extends to basic values 'implicit in the concept of ordered liberty' [citation] and to 'the basic civil rights of man.' [Citation.] Among such basic liberties and rights not explicitly listed in the Constitution are the right 'to marry, establish a home and bring up children' [citation]; the right to educate one's children as one chooses [citation]; . . . and the right to privacy and *to be let alone by the government* in 'the private realm of family life.' [Citations.]" (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 266–267 [85 Cal.Rptr. 1, 466 P.2d 225], italics added.)

### B. *"Other Person on Behalf of the Minor"*

The specific statute relied on by Petersen identifies persons who may petition for appointment of a guardian of a minor as "[a] relative or other person on behalf of the minor." (§ 1510, subd. (a).) The statute does not use the terms "any person" or "interested person," both of which have been defined and used in the California codes.[2] The phrase "other person on behalf of the minor" must have a definition that is different from either of these terms.[3] (See *In re Crocker* (1917) 174 Cal. 660, 662 [163 P. 1015] [acquain-

---

[2] The term "any person" appears more than 540 times in the current versions of the Probate Code, the Family Code, and the Code of Civil Procedure. The term "interested person" appears over 225 times in those same codes.

[3] "Person" is defined as "an individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, limited liability company, association, or other entity." (§ 56.) The term "interested person" is defined thus: "(a) Subject to subdivision (b), 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. [¶] (2) Any person having priority for appointment as personal representative. [¶] (3) A fiduciary representing an interested person. [¶] (b) The meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding." (§ 48.) Specific to guardianship proceedings (§ 1401 et seq.), the Probate Code contains an additional definition of "interested person": " 'Interested person' includes, but is not limited to: [¶] (a) Any interested state, local, or federal entity or agency. [¶] (b) Any interested public officer or employee of this state or of a local public entity of this state or of the federal government." (§ 1424.)

tance with proposed ward and familiarity with her financial affairs gave business manager of ward's deceased husband standing to apply for appointment of guardianship of estate "as 'a friend' " of ward].)

What did the Legislature mean when it used the phrase "other person on behalf of the minor" in section 1510, subdivision (a)? The Probate Code does not define the phrase, and there is no legislative history to assist us.[4]

No published case has interpreted the phrase "other person on behalf of the minor." In *Guardianship of Olivia J.* (2000) 84 Cal.App.4th 1146, 1152 [101 Cal.Rptr.2d 364], the court held that status as a nonparent did not preclude the appellant from filing a petition for appointment of a guardian of the person of a minor. We agree with this conclusion, but that case is not directly on point, because the appellant was the former domestic partner of the minor's mother, had lived with the minor from her birth until she was two years old, and loved and supported the minor as her own daughter. (*Id.* at p. 1149.) The appellant in that case was a former member of the household and unquestionably a person closer to the minor than Petersen is to the octuplets here.

---

[4] As amended in 1861, Code of Civil Procedure former section 1807 read: "The Probate Judge of each county, when it shall appear necessary, or convenient, may appoint Guardians to the persons and estates, or either of them, of minors, who have no Guardian legally appointed by will, and who are inhabitants, or residents, in the same county, or who shall reside without the State and have any estate within the county, *such appointment may be made on the application, by petition, of a relative, or any person intrusted in, or befriending, such minor.* Before making such appointment, the Judge shall cause such notice to be given to the relatives of the minor residing in the county, and to any person under whose care such minor may be, as he shall on due inquiry, deem reasonable." (Italics added.) No legislative history exists explaining the intent behind the italicized language.

In 1872, the Legislature enacted a major codification of California law, including Code of Civil Procedure former section 1747, which read as follows: "The Probate Judge of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either of them, of minors who have no guardian legally appointed by will, and who are inhabitants or residents of the county, or who reside without the State and have estate within the county. *Such appointment may be made on the petition of a relative or other person, in behalf of such minor.* Before making the appointment, the Judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county, and to any person under whose care such minor may be, as he deems reasonable." (Italics added.) As with Code of Civil Procedure former section 1807, no legislative history exists explaining why the Legislature chose this language, or why it did not continue former section 1807 without change. The language of the statute regarding petitions for appointment of a guardian, whether appearing in the Code of Civil Procedure or the Probate Code, has not changed substantially since 1872.

In her return brief, Suleman suggests the relevant language was changed from "any person" to "other person" in 1979. Suleman is incorrect. The statute to which she refers—former section 1754—dealt with conservatorships, not guardianships. (See Historical and Statutory Notes, 52A West's Ann. Prob. Code (2002 ed.) foll. § 1820, p. 202.)

■ Therefore, in order to determine whether Petersen has standing in this case, we must consider the statute's words and purpose, and the principle of limiting court intervention in a parent's civil rights unless an affirmative showing has been made to warrant such intervention. We also recognize the importance of the child's best interest, which is emphasized throughout the California codes. "[T]he courts of this state have adopted the common sense rule that the purpose of guardianship proceedings is to protect and promote the best interest of the child, and will not permit that purpose to be frustrated by the raising of technical jurisdictional objections. . . . The only real jurisdictional question is . . . does the best interests of the child require that a guardian be appointed?" (*Guardianship of Smith* (1957) 147 Cal.App.2d 686, 691–692 [306 P.2d 86].)

C. *For Standing, an "Other Person on Behalf of the Minor" Seeking Appointment of a Guardian of the Estate of a Minor Must Provide the Court with Information Showing Financial Mismanagement or Other Information Sufficient to Warrant Court Intervention.*

■ With these principles in mind, in connection with a petition for appointment of a guardian of the estate of a minor, we hold an "other person on behalf of the minor" is a person who *pleads ultimate facts demonstrating financial misconduct* or *alleges other information sufficient to warrant court intervention* in the management of the minor's money or other property. This test for standing is similar to the test requested by both Petersen and amicus curiae, the American Federation of Television and Radio Artists, AFL-CIO, on Petersen's behalf. In his answer to Suleman's petition for a writ of mandate/prohibition, Petersen stated his proposed test thus: "[W]hen some 'other person' (in the language of Section 1510[, subdivision ](a)) acquires information indicating a parent's abuse of his/her child's property or funds, it is crucial for the apparent abuse to be brought before the Court for investigation even if the petitioner ('other person') does not have personal knowledge of the facts."[5] Amicus curiae stated its suggested test as follows: "The ability of an informed, but unrelated third party advocate to petition for a guardianship is a critical safeguard in insuring that such exploited minors will be given the opportunity to be heard by the courts and that their own best interests will be distinguished from those of their parents."

---

[5] Petersen cites to *Guardianship of Kentera* (1953) 41 Cal.2d 639, 642–643 [262 P.2d 317], in support of his argument. That case is inapposite because it involved a petition for guardianship of the person, not of the estate, of a minor. (*Id.* at p. 641.) The case does not support the proposition that ownership of property alone justifies appointment of a guardian of the estate.

At oral argument before this court, Petersen's counsel suggested the petition met his proposed test because the petition brought to the probate court's attention the "potential" of Suleman's mismanagement of the children's finances. Petersen principally relies on Suleman's declaration in opposition to the petition for guardianship, in which Suleman states, in relevant part: "I will ensure all applicable laws will be strictly adhered to on behalf of my children. I will ensure that any and all earning[s] of all of my children are protected in accordance with the laws of the State of California. Any mandatory financial accounts will be accurately maintained and managed in an appropriate manner. . . . [¶] . . . [¶] . . . I will comply with all California Laws and regulations for all my children. . . . I will take all necessary steps to protect my children's finances as well [as] prohibit any exploitation of my children by Gloria Allred, Paul Petersen or any other third parties."

Petersen's counsel also contended at oral argument that because Suleman declared only that she *will* do everything properly in the future, not that she *had* done everything properly to this point, the probate court could presume that financial mismanagement "may" have occurred. Petersen's counsel's argument completely misses the point: A petition must contain ultimate facts, not speculation as to what circumstances might exist. It is the burden of the petitioner to plead those facts. Petersen's probate petition stands or falls on its own merits, and it is manifestly inadequate.

The test for standing under section 1510, subdivision (a) that we employ here is consistent with and supported by discussions of related points in cases interpreting prior versions of section 1510 and other analogous statutes. (*Guardianship of Lee* (1954) 123 Cal.App.2d 882, 885 [267 P.2d 847] [" 'If enough is stated to inform the court that it should interfere, the petition [for appointment of a guardian of the estate or the person] is sufficient, and the duty then devolves upon the court to inform itself, and take such action as may seem proper' "; considering former § 1440]; *In re Lukasik* (1951) 108 Cal.App.2d 438, 445–446 [239 P.2d 492] ["The welfare of the children is the essential subject matter of the action and strangers are little more than informants to the court when they initiate the proceeding," presuming person requesting appointment of guardian has some information to provide to the court; guardianship sought under provisions of former § 1406 et seq.]; *In re Tilton* (1911) 15 Cal.App. 244, 250 [114 P. 594] ["If there is sufficient [information] stated to inform the court that it should interfere for the protection of persons dependent upon it for protection, it is sufficient, and the duty is then devolved upon the court to inform itself, and take such action as

may seem to be necessary and proper"; guardian appointed for incompetent adult pursuant to Code Civ. Proc., former § 1764].)

### D. *Suleman's Arguments for a Narrower Test Are Not Persuasive.*

Suleman argues the test for standing should be narrower: "A person to qualify as an 'other person on behalf of the minor' must, at a minimum, have a relationship, nexus or some personal knowledge regarding the necessity of a guardianship and the best interests of the minor." Suleman offers no authority to support this proposed test, and fails to explain how this can be the correct test, in light of the purposes behind the guardianship statutes. The cases to which she cites requiring proof of a strong relationship between the proposed guardian and the minor arise in the context of deciding whether a particular person can be appointed as a guardian, not whether the person filing the petition for appointment of a guardian has standing to do so. (See *Guardianship of Olivia J., supra,* 84 Cal.App.4th 1146; *Guardianship of Zachary H.* (1999) 73 Cal.App.4th 51 [86 Cal.Rptr.2d 7]; *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407 [188 Cal.Rptr. 781].) Nothing in the law or experience establishes a person lacking a close personal relationship with the minor cannot provide sufficient information to the court in a petition for appointment of a guardian of the estate of a minor.

Suleman also argues that permitting a completely unconnected third party, such as Petersen, to file a petition for appointment of a guardian will cause unwarranted harm to celebrities and public figures. She contends: "If this court allows random third parties the right to file Petitions for Guardianship, celebrities, entertainers, public figures and other parents will be forced to defend frivolous guardianships such as this case. [¶] Any member of the general public, just by the mere filing of a Guardianship Petition, will have the right to confidential family information such as financial history, medical history, dental history and other confidential information regarding the minor and the minor's family. [¶] Parents and their children will be subject to unwarranted investigations by social services, court investigators, and discovery just because a third party has the ability to file a Petition in Probate Court." The test we apply today adequately addresses these concerns. The mere filing of a petition is not enough to subject any parent—whether or not a celebrity—to court intervention. But if the petitioner—whether or not he or she has a close, personal relationship with the family in question—has shown sufficient information to warrant the appointment of a guardian of the estate or the person of a minor, then the petition can survive a motion to dismiss.

Suleman next argues Petersen is not an interested party pursuant to section 1424. Contrary to Suleman's arguments, Petersen does not have to be

aggrieved or to have a direct interest in the outcome of the litigation. Code of Civil Procedure section 367 provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." Probate Code section 1510, subdivision (a) states that an action for appointment of a guardian of the estate or the person of a minor does not need to be prosecuted in the name of the real party in interest, thus qualifying as an exception to Code of Civil Procedure section 367.

### E. *Application of Test for Standing and Sufficiency of the Pleadings*

As explained *ante*, under section 1510, subdivision (a), the test for determining whether a nonrelative has standing to file a petition for appointment of a guardian is the same as the test for determining whether the allegations of the petition are sufficient to survive a motion to dismiss. We therefore address these two separate issues jointly.

Because the probate court's order denying Suleman's motion to dismiss Petersen's petition for appointment of a guardian raises purely legal issues, our review is de novo. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080 [67 Cal.Rptr.3d 832].)

What information do we have before us? Petersen is not a relative under section 1510, subdivision (a). Petersen has never met and never had any contact with Suleman, her children, or any member of her family. All of the information presented in the petition for appointment of a guardian has come from television or the Internet. Petersen has provided no documentary evidence (much less admissible evidence) that raises a reasonable inference of wrongdoing. The information provided can be summed up as follows: Suleman and her children have appeared on television and the Internet, presumably in exchange for money. No evidence of financial mismanagement on the part of Suleman is offered. Petersen admits he does not know whether Suleman has taken the appropriate steps to ensure that 15 percent of each child's portion of any earnings has been placed into a Coogan Trust Account.[6]

Under the test we have explained *ante*, does this showing by Petersen suffice to confer standing? On this record, the answer is no, because the petition does not allege ultimate facts showing financial mismanagement or other ultimate facts that warrant court intervention in the family's financial

---

[6] California law requires that for any child performer, 15 percent of the child's gross earnings be set aside in a blocked account, known as a Coogan Trust Account. (Fam. Code, §§ 6752, subds. (b)(1), (d)(1), 6753.)

affairs, under section 1510, subdivision (a). For the same reasons, the petition is insufficient to survive a motion to dismiss.

### F. *Evidentiary Objections*

The probate court failed to rule on Suleman's evidentiary objections, concluding the determination of Petersen's standing was a legal issue, to which the challenged documents and statements were irrelevant. Because the test we have employed in this opinion requires the probate court to determine standing and sufficiency of the petition based on whether the information provided by the petitioner is sufficient to warrant court intervention in the management of a minor's finances, it was incumbent upon the court to rule on the objections.

Nevertheless, as we have explained, even if we consider all the information contained in and attached to the original and amended petitions, and the opposition to the motion to dismiss, that information would be insufficient to grant standing to Petersen to request appointment of a guardian of the estates of the children under section 1510, subdivision (a) or to survive a motion to dismiss. The petition alleged only (1) the octuplets were born, and had been released from the hospital; (2) Suleman had entered into agreements with certain companies; and (3) it was unknown whether, in doing so, Suleman and those companies had complied with California law. At oral argument, Petersen's appellate counsel stated that he could yet again amend the petition to correct any deficiencies in the allegations. However, he never told us how he could amend the petition, much less how he could do so to meet even the test for standing he proposed.

### III.

#### INVESTIGATION

The second issue before us is the propriety of the probate court's order that SSA conduct an investigation and report its recommendation regarding the proposed guardianship. Section 1513, subdivision (a) reads in relevant part as follows: "Unless waived by the court, a court investigator, probation officer, or domestic relations investigator may make an investigation and file with the court a report and recommendation concerning each proposed guardianship of the person or guardianship of the estate. Investigations where the proposed guardian is a relative shall be made by a court investigator. Investigations where the proposed guardian is a nonrelative shall be made by the county agency designated to investigate potential dependency." The statute specifies certain necessary issues to be included in the report where guardianship of

the person is sought; no specifics are mentioned where guardianship of the estate is sought.

The Local Rules of the Superior Court of Orange County waive the provisions of section 1513 when appointment of a guardian of the person is not sought. "When a petition requests appointment of a guardian of the estate only, the investigation otherwise required by Probate Code section 1513 is waived, and no guardianship investigation fee is required." (Super. Ct. Orange County, Local Rules, rule 610.05.) Because Petersen sought appointment of a guardian of the estates only, section 1513 was waived.

Petersen argues the Superior Court of Orange County, Local Rules, rule 610.05 does not waive a section 1513 investigation, because that rule by its language applies only to investigations "required" by section 1513. Rule 610.05 was adopted in 1992, when section 1513 required an investigation be conducted in all cases, unless waived by the court. That language was amended in 1993, when the Legislature determined that the investigations would be permissive. (Stats. 1993, ch. 59, § 16, p. 857.) Therefore, Petersen argues, "[b]ecause the post 1993 version of Section 1513[, subdivision ](a) no longer requires an investigation, Local Rule 610.05 does not apply, and consequently does not declare an automatic waiver of the investigation."

Petersen's argument on this point fails for three reasons. First, section 1513 became more permissive, not less, when it was amended in 1993. If the Orange County Superior Court Local Rules, rule 610.05 waived the statutory investigation when such an investigation was *required* by statute, why would it not waive the investigation when it was merely *permitted*? Second, we presume the Orange County Superior Court knows what it is doing in formulating and maintaining its own rules. Third, Petersen fails to address the probate examiner's notes for the hearings on July 27 and August 31, 2009, which expressly state: "No report required—estate only. Rule 610.05."

Even setting aside the statutory interpretation question, Petersen concedes that the probate court erred by ordering an investigation without providing Suleman with notice or an opportunity to be heard before issuing its order.

The order that SSA conduct an investigation and provide a report with a recommendation to the probate court is therefore vacated. Given our holding, we do not reach the question whether the probate court would have had sufficient grounds to order an investigation, even if notice and an opportunity to be heard had been given, and the probate court had not waived the power to order such an investigation.

## DISPOSITION AND ORDER

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the probate court to (1) vacate its order denying Nadya Suleman's motion to dismiss and vacate its order for an investigation by SSA, and (2) issue an order granting Nadya Suleman's motion to dismiss. This court's previously issued order staying the probate court's order for an investigation by SSA shall dissolve when the probate court so vacates its order and enters a new order consistent with this opinion. This court's previously issued order staying all further proceedings in the probate court shall dissolve at the same time. Petitioner to recover costs incurred in this proceeding.

Rylaarsdam, Acting P. J., and Moore, J., concurred.